*467 Lundberg Stratton, J.
{¶ 1} Pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25, the Sixth District Court of Appeals certified its judgment in this case as being in conflict with the judgments of the Eighth District Court of Appeals in State v. Briscoe, 8th Dist. No. 89979, 2008-Ohio-6276, 2008 WL 5084720, and the Third District Court of Appeals in State v. Alvarez, 3d Dist. No. 4-08-02, 2008-Ohio-5189, 2008 WL 4455611, on the following issue: “Whether the holdings of State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 [885 N.E.2d 917] and State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749 [893 N.E.2d 169] are applicable to the offense of aggravated robbery in violation of R.C. 2911.01(A)(3) or only to the offense of robbery, a violation of R.C. 2911.02(A)(2).” We also accept appellant’s discretionary appeal on Proposition of Law Nos. I and II but stayed briefing on the appeal.[1]
{¶2} We hold that neither of the two Colon cases are applicable and the indictment was not defective. Accordingly, we affirm the judgment of the court of appeals.
I. Facts
{¶ 3} In March 2006, Gregory Horner, defendant-appellant, and his codefen-dant, James Hahn, met two Michigan businessmen, Robert Peck and Tim Mulroy, and Robert’s son, Kyle, on the pretense of selling Peck and Mulroy a muscle car. Horner and Hahn beat the victims and robbed them of cash.
{¶ 4} A grand jury indicted Horner on six counts relating to his crimes, including two counts of aggravated robbery, in violation of R.C. 2911.01(A)(3), with firearm specifications, in relation to the two adult victims; one count of aggravated robbery in violation of R.C. 2911.01(A)(3), which was later amended to R.C. 2911.01(A)(1), with a firearm specification; and three counts of felonious assault in violation of R.C. 2903.11(A)(1), with firearm specifications.
{¶ 5} Horner pleaded no contest to five counts. In exchange, the state nolled one count of felonious assault and recommended a maximum sentence of ten years. Horner’s codefendant was sentenced to 12 years rather than the state-recommended sentence of ten years. Horner then orally requested leave to obtain new counsel and to file a motion to withdraw his no-contest plea. The trial court held a hearing on the motion to withdraw his plea in May 2007. Horner, who had retained new counsel, testified on direct and cross-examination. The trial court denied the motion to withdraw the plea and sentenced him to 11 years.
*468 {¶ 6} On appeal, Horner argued for the first time that the two counts of aggravated robbery in the indictment were insufficient pursuant to State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (“Colon I ”), and State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 (“Colon II”), because a culpable mental state was not included in the indictment. The Sixth District Court of Appeals disagreed, holding that Colon I and Colon II apply only to cases in which a defendant has been indicted for robbery pursuant to R.C. 2911.02(A)(2). Since Horner was charged with aggravated robbery rather than robbery, the court held that his indictment was not defective. Thus, the court held that there was no plain error and, accordingly, affirmed the judgment of the trial court.
{¶ 7} The Sixth District certified a conflict over the applicability of Colon I and Colon II, and recognizing the conflict, we accepted jurisdiction.
II. Law and Analysis

A. The Indictment

{¶ 8} Section 10, Article I of the Ohio Constitution provides that “no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury.” Crim.R. 7(B) explains the structure and sufficiency requirements of an indictment: “The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged.”
{¶ 9} When the offense does not track the language of the statute, Crim.R. 7(D) addresses amendments to criminal indictments: “The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.” We have held that “[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment. (Crim.R. 7[D], construed and applied.)” State v. O'Brien (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph two of the syllabus.
{¶ 10} The purpose of a grand jury indictment has always been to give notice to the accused: “[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to *469 meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible.” Horton v. State (1911), 85 Ohio St. 13, 19, 96 N.E. 797.
{¶ 11} Expanding on the idea of notice to the accused, we have held that “[t]he purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident.” State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7, citing Weaver v. Sacks (1962), 173 Ohio St. 415, 417, 20 O.O.2d 43, 183 N.E.2d 373, and State v. Sellarás (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781. In Buehner, we held that an indictment that tracked the language of the charged offense and identified a predicate offense by statute number but did not include each element of the predicate offense still provided the defendant with adequate notice of the charges against him. Id. at syllabus.
{¶ 12} In Buehner, the defendant was charged with ethnic intimidation under R.C. 2927.12(A), an element of which is the commission of a predicate offense (“No person shall violate [R.C.] 2903.21, 2903.22, 2909.06, or 2917.21 * * * by reason of the race, color, religion, or national origin of another person or group of persons”). The indictment tracked the language of the statute and identified by statute number which of the several predicate offenses was being charged. We rejected the argument that the indictment was defective for failing to list the elements of the predicate offense, concluding that it is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense. Therefore, the indictment provided the defendant with adequate notice of the charge against him. Id. at ¶ 12.
{¶ 13} Here, the two counts of the indictment in question read: “[I]n attempting or committing a theft offense as defined in § 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, [Horner] did inflict, or attempt to inflict, serious physical harm on another, in violation of § 2911.01(A)(3) OF THE OHIO REVISED CODE, AGGRAVATED ROBBERY, BEING A FELONY OF THE FIRST DEGREE.”
{¶ 14} R.C. 2911.01 defines the elements of aggravated robbery as follows:
{¶ 15} “(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
{¶ 16} “* * *
{¶ 17} “(3) Inflict, or attempt to inflict, serious physical harm on another.”
{¶ 18} As required by Buehner, the language of the indictment tracked the language of the statute. However, Horner argues that this court’s post -Buehner *470 decisions in Colon I and Colon II render his indictment defective on counts one and two and, in turn, require this court to vacate those convictions. We disagree.

B. Absence of a Culpable Mental State and the Role of R.C. 2901.21(B)

{¶ 19} As can be seen above, the aggravated-robbery statute does not expressly state a mental state for aggravated robbery when it involves inflicting or attempting to inflict serious physical harm on another during the commission of the robbery. Consequently, we must turn to R.C. 2901.21(B), which provides guidance in determining the requirements for criminal liability when a statute defining an offense does not provide a mental state.
{¶ 20} R.C. 2901.21(B) provides:
{¶ 21} “When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.” (Emphasis added.)
{¶ 22} In deciding whether, pursuant to R.C. 2901.21(B), recklessness is the culpable mental state required to commit the crime of aggravated robbery as defined in R.C. 2911.01(A)(3), we first consider the words of the statute to determine legislative intent. Provident Bank v. Wood (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. We must “give effect to the words used, not * * * delete words used or * * * insert words not used.” Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm. (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8.
{¶ 23} Horner argues that recklessness is the requisite culpable mental state for aggravated robbery under R.C. 2911.01(A)(3). The state contends that no specific mental state must be charged or proven. Under R.C. 2901.21(B), recklessness is sufficient culpability to commit an offense if two factors are present. First, the section of the Revised Code defining the offense must not specify any degree of culpability. Second, the section must not plainly indicate a purpose to impose strict liability.
1. Analysis of R.C. 2901.21(B) in State v. Wac and State v. Maxwell
{¶ 24} Our line of cases conducting this analysis begins with the seminal case of State v. Wac (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, where we found plain indications that the General Assembly meant to impose strict criminal liability for the crimes of bookmaking in violation of R.C. 2915.02(A)(1) and operating a gambling house in violation of R.C. 2915.03(A)(1). Wac argued that recklessness was an element of bookmaking because R.C. 2915.02(A)(1) neither *471 specified a culpable mental state nor plainly indicated a purpose to impose strict liability.
{¶ 25} R.C. 2915.02 provides:
{¶ 26} “(A) No person shall do any of the following:
{¶ 27} “(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking.”
{¶ 28} We held that “[t]he General Assembly included the culpable mental state of ‘knowingly’ as an element of facilitating bookmaking. Nevertheless, there is no such requirement in the same subsection for bookmaking per se. This exclusion ‘plainly indicates a purpose to impose strict criminal liability * * *.’ R.C. 2901.21(B).” (Emphasis sic.) Id., 68 Ohio St.2d at 86, 22 O.O.3d 299, 428 N.E.2d 428.
{¶ 29} Further, Wac argued that recklessness was an element of operating a gambling house because R.C. 2915.03(A)(1) did not specify a culpable mental state for using or occupying premises for gambling. The statute provides:
{¶ 30} “(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:
{¶ 31} “(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;
{¶ 32} “(2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code.”
{¶ 33} With regard to operating a gambling house, we held that “[t]he General Assembly included recklessness as an element of permitting gambling on one’s premises in subsection (2). Subsection (1), however, does not contain a comparable standard. This exclusion ‘plainly indicates a purpose to impose strict criminal liability * * *.’ R.C. 2901.21(B).” Wac, 68 Ohio St.2d at 87, 22 O.O.3d 299, 428 N.E.2d 428.
{¶ 34} Thus, in R.C. 2915.02 (bookmaking), we concluded that when a single subsection of a statute with two discrete clauses contains one clause that expresses a culpable mental state and another discrete clause that does not, the General Assembly has plainly indicated a purpose to impose strict criminal liability under R.C. 2901.21(B). In addition, in R.C. 2915.03 (gambling house), which involved two separate divisions of the statute rather than a single subsection with two discrete clauses, we concluded that the inclusion of a culpable mental state in one division and the omission of a culpable mental state from another division means that the General Assembly plainly indicated a purpose to impose strict criminal liability for the second division.
*472 {¶ 35} Continuing the analysis from State v. Wae, in State v. Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, this court considered R.C. 2907.321(A)(6), which provides:
{¶ 36} “(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
{¶ 37} “ * * *
{¶ 38} “(6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers.”
{¶ 39} In examining whether R.C. 2901.21(B) supplied the culpable mental state of recklessness for the element of bringing child pornography into the state, we noted that “we need to determine whether the entire section includes a mental element, not just whether division (A)(6) includes such an element.” (Emphasis sic.) Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, at ¶ 22. We concluded that in R.C. 2907.321(A), “knowledge is a requirement only for the discrete clause within which it resides: ‘with knowledge of the character of the material or performance involved.’ Thus, the state must prove that appellee knew the character of the material at issue. The state is not required to prove that appellee knew that in downloading files via America Online he was also transmitting those files from Virginia into Ohio.” Id., ¶ 29. The court held that the statute plainly indicated a purpose to impose strict liability, thus precluding the application of recklessness as the culpable mental state.
2. Robbery, Aggravated Robbery, and State v. Colon
{¶ 40} Turning now to robbery and aggravated robbery, we have previously held that the deadly-weapon element of robbery in R.C. 2911.02(A)(1) does not require proof of a mens rea. State v. Wharf (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. Similarly, we have also held that the deadly-weapon element of aggravated robbery in R.C. 2911.01(A)(1) does not require a mens rea. State v. Lester, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038. Neither case followed the Wac or Maxwell analysis, but in both cases, we concluded that the General Assembly had intended that a theft offense committed while an offender was in possession or control of a deadly weapon constituted robbery (and that brandishing or using a deadly weapon constituted aggravated robbery), and no intent beyond that required for the theft offense must be proven.
{¶ 41} In Colon I, we considered the culpable mental state for the offense of robbery in violation of R.C. 2911.02(A)(2), i.e., physical-harm robbery. Again, this court did not apply the analysis used in Wac and Maxwell. However, neither did Colon I overrule Wac or Maxwell. Rather, we simply concluded in Colon I that while the statute did not specify a particular degree of culpability for the physical-harm element, its language does not plainly indicate that strict liability is *473 the mental standard. Thus, the court concluded that the state was required to prove recklessness and that the indictment was defective for failure to charge recklessness, a point that the state conceded. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 14-15.
{¶ 42} We went on to hold that “[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment,” id. at syllabus, and that instead, a structural error analysis is appropriate, id. at ¶ 23.
{¶ 43} Upon reconsideration in Colon II, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, we limited Colon I, holding that it was prospective only, id. at ¶ 3, and that structural-error analysis is not appropriate unless there are multiple errors throughout the trial that are inextricably linked to the defective indictment, id. at ¶ 7, and that the syllabus in Colon I was confined to the facts of that case, id. at ¶ 8.
{¶ 44} Still, the effect of our Colon holdings meant that for the first time, an indictment that charged an offense in the exact language of the Revised Code could still be defective when the statute itself failed to specify a culpable mental state. As a result, Colon I and Colon II have been called “a boon to defendants, a headache to appellate courts, and a nightmare to prosecutors.” State v. Lester, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, ¶ 35 (Lanzinger, J., concurring in judgment only).
{¶ 45} Today we recognize the confusion created by Colon I and II and hold that when an indictment fails to charge a mens rea element of the crime, but tracks the language of the criminal statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is, therefore, not defective. See State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162 (an indictment that does not identify the elements of a predicate offense provides adequate notice by citing the statute defining the predicate offense). Consequently, we respond to the certified question by holding that Colon I, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, and Colon II, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, are inapplicable to the offense of aggravated robbery in violation of R.C. 2911.01(A)(3). In fact, Colon I is overruled, and Colon II is overruled to the extent that it holds that such an indictment is defective.
{¶ 46} Further, we hold that failure to timely object to a defect in an indictment constitutes a waiver of the error. Crim.R. 12(C)(2) (objections to defect in indictment must be raised before trial). Any claim of error in the indictment in such a case is limited to a plain-error review on appeal. State v. Frazier (1995), 73 Ohio St.3d 323, 652 N.E.2d 1000; Crim.R. 52(B).

*474
C. Application of R.C. 2901.21(B) to 2911.01(A)(3)

{¶ 47} It remains to be determined what mental state, if any, applies to aggravated robbery as described in R.C. 2911.01(A)(3). As stated previously, R.C. 2901.21(B) supplies the mental state of recklessness only when two conditions are present: (1) no mental state is specified in the relevant statute and (2) the statute does not plainly indicate a purpose to impose strict liability.
{¶ 48} We reaffirm our Wac/Maxwell analysis. Therefore, we need to examine the entire section — not just division (A)(3) — for references to a mental state. This existence or nonexistence of specified mental states elsewhere in R.C. 2911.01 will inform our analysis of whether (A)(3) was meant to be a strict-liability offense.
{¶ 49} R.C. 2911.01(A) includes the element of attempting or committing a theft offense, which incorporates all the elements of theft, including its mental state. However, that mental state is applicable to the theft aspect in division (A) only, and its incorporation into division (A) does not provide a mental state for the physical-harm element described in subsection (A)(3). See Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 23 (rejecting the argument that the mental state in a division of the relevant statute for one element of an offense also applies to a subsection in that division that does not specify a mental state).
{¶ 50} Moreover, division (B) of the aggravated-robbery statute specifies the culpable mental state of “knowingly” (“No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon * * * ”).
{¶ 51} Additionally, this court has already held that subsection (1) of division (A), which also does not specify a mental element, is a strict-liability offense, based on the court’s conclusion that R.C. 2911.01(A)(1) plainly indicates a purpose to impose strict liability. Lester, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, ¶ 32. By choosing language in R.C. 2911.01(A)(3) that makes it a crime to merely inflict or attempt to inflict serious physical harm, as opposed to requiring a purpose or intent to injure, the General Assembly similarly has indicated its purpose to impose strict liability. See Wharf, 86 Ohio St.3d at 378, 715 N.E.2d 172; Lester, at ¶ 20.
{¶ 52} Accordingly, under the Wac/Maxwell approach to applying R.C. 2901.21(B), in defining the offense of serious-physical-harm aggravated robbery, R.C. 2911.01(A)(3) “plainly indicates a purpose to impose strict liability.” It is clear that the General Assembly intended R.C. 2911.01(A)(3) to hold persons responsible for aggravated robbery because of the heightened potential for even accidental physical harm that results from the commission of the robbery.
*475 {¶ 53} The section defining the offense — R.C. 2911.01- — -specifies “knowingly” as a mens rea for the crime defined in division (B) of that statute, and R.C. 2911.01(A)(3) includes as an element an underlying theft offense, which itself includes a mens rea. Additionally, R.C. 2911.01(A)(3), defining the offense of serious-physical-harm aggravated robbery, plainly indicates a purpose to impose strict liability. Accordingly, R.C. 2911.01(A)(3) does not require proof of a mental state, and an indictment that does not identify a mental state is not defective.
III. Conclusion
{¶ 54} For all of the reasons expressed above, we hold that an indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state. We further hold that when the General Assembly includes a mens rea element in one discrete clause, subsection, or division of a statute but not in another discrete clause, subsection, or division of that statute, courts must apply the analysis in State v. Wac (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, and State v. Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, to determine the mental state where none is specified. We hold that by failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal. Because Colon I represents a departure from these principles, it is overruled.
{¶ 55} Thus,' because the language of Horner’s indictment charging him with aggravated robbery tracked the aggravated-robbery statute, R.C. 2911.01(A)(3), and because the statute does not require any further mens rea requirement beyond that encompassed in the theft portion of the statute, the grand jury considered the essential elements of aggravated robbery. Accordingly, we uphold the appellate court’s determinations that the indictment was not defective and that there was no plain error, and we affirm the judgment of the court of appeals.
Judgment affirmed.
O’Connor, O’Donnell, and Cupp, JJ., concur.
Lanzinger, J., concurs in part and dissents in part.
Pfeifer, J., dissents.
Brown, C.J., not participating.

. In view of our resolution of the certified question, we dismiss the appeal as having been improvidently accepted.