[Cite as *State v. Watson*, 2011-Ohio-6153.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    10 BE 18 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| BENJAMIN WATSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from Common Pleas
                                 Court, Case No. 09CR219.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Chris Berhalter
                                 Prosecuting Attorney
                                 Attorney Helen Yonak
                                 Assistant Prosecuting Attorney
                                 147-A West Main Street
                                 St. Clairsville, Ohio  43950


For Defendant-Appellant:         Attorney John Vavra
                                 132 West Main Street
                                 St. Clairsville, Ohio  43950


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                 Dated:  November 28, 2011

VUKOVICH, J.

¶{1}    Defendant-appellant Benjamin Watson appeals from his conviction in the Belmont County Common Pleas Court for a violation of R.C. 2950.05(F)(1), which is failing to notify a sheriff of a change of address pursuant R.C. 2950.05(A).  Watson asserts two arguments in this appeal.  First, he argues that not only is the indictment defective, but it also fails to charge him with an offense.  Second, he contends that the conviction is against the manifest weight of the evidence.

¶{2}    For the reasons expressed more fully infra, the indictment adequately charged Watson with a violation of R.C. 2950.05(A).  Furthermore, after reviewing the testimony and evidence submitted at trial, it is clear that the trial court did not lose its way when it found Watson guilty of the indicted offense.  Therefore, the judgment of the trial court is hereby affirmed.

## STATEMENT OF CASE

¶{3}    It is undisputed that Watson was previously convicted of a sexually oriented offense and is a Tier 3 offender that is required to register every 90 days for the rest of his life.  In November 2009, he was indicted for allegedly violating the registration requirements in R.C. 2950.05(F)(1) from November 2008 through January 2009.  Watson pled not guilty, waived his right to a jury trial and the cause proceeded to a bench trial.  During the direct testimony of the first witness, Watson objected and moved to dismiss the case based on a defective indictment.  (Tr. 6).  At the close of trial, the court granted Watson ten days to file a motion to dismiss.  Following the briefing, the trial court denied the motion to dismiss, found Watson guilty and set the matter for sentencing.  Watson received a three year sentence for the conviction.  He filed a motion to stay execution during the pendency of the appeal, which was granted.

## FIRST ASSIGNMENT OF ERROR

¶{4}    "THE TRIAL COURT ERRED IN FAILING TO DISMISS THIS ACTION WHERE VITAL AND MATERIAL ELEMENTS IDENTIFYING AND CHARACTERIZING THE CRIME CHARGED WERE OMITTED FROM THE INDICTMENT SUCH THAT THE INDICTMENT WAS INSUFFICIENT TO CHARGE AN OFFENSE."

¶{5}    Crim.R. 12(C)(2) states:

**¶{6}** "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:

**¶{7}** "* * *

**¶{8}** "(2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)."

**¶{9}** The Ohio Supreme Court has stated that the failure to timely object to a defect in an indictment constitutes a waiver of the error. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶46, 55; Crim.R. 12(C)(2). Therefore, "any claim of error in the indictment" is limited to a plain error review. Id.

**¶{10}** As aforementioned, Watson did not object to the indictment prior to trial. Thus, as to any defect in the indictment, he waived all but plain error. However, Watson's argument not only encompasses the position that the indictment was defective, but that it also failed to charge him with an offense. That argument can be raised at any time and is not reviewed under a plain error analysis.

**¶{11}** Our review of the indictment will begin with Watson's position that the indictment failed to charge him with an offense. The indictment read as follows:

**¶{12}** "THE JURORS OF THE GRAND JURY of the State of Ohio, * * * do find and present that * * * BENJAMIN ALAN WATSON being a person who is required to register with the Belmont County Sheriff's Office in Belmont County, Ohio pursuant to Ohio Revised Code §2950.04, did fail to provide written notice of a residence address change to the sheriff's office in Belmont County, Ohio, the office with whom he had most recently registered, at least three days prior to changing his address, between the dates of November 2008 and January 2009. . . in violation of the Ohio Revised Code, Title Twenty-Nine Section 2950.05(F)(1), and against the peace and dignity of the State of Ohio."

**¶{13}** The statute cited in the indictment was R.C. 2950.05(F)(1), which provides:

**¶{14}** "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section or a change in vehicle information or identifiers

pursuant to division (D) of this section shall fail to notify the appropriate sheriff in accordance with that division."

¶{15} The parties agree that the reference to (F)(1) is an assertion that there is a violation of subsection (A).

¶{16} Watson argues that the language in the indictment "written notice of residence address change" is an element of R.C. 2950.05(B), not R.C. 2950.05(A). Thus, he asserts that the indictment is not adequately charging him with a violation of R.C 2950.05(A) because it is in actuality listing the elements of R.C. 2950.05(B).

¶{17} It has been held that in order to satisfy federal and state constitutional requirements, a charging instrument must contain the elements of the offense charged and fairly inform the defendant of the charge against which he must defend and enables him to present an acquittal or conviction of the charge as a bar to future prosecutions for the same offense. *Horner*, supra, ¶11, citing *State v. Buehner,* 110 Ohio St.3d 403, 2006-Ohio-4707, ¶7; *State v. Maisch*, 173 Ohio App.3d 724, 2007-Ohio-6230, ¶34, citing *State v. Reinhart,* 3d Dist. No. 15-06-07, 2007-Ohio-2284, ¶14.

In order to determine whether there is any validity in Waston's argument, i.e. whether the indictment fairly informed Watson of the violation of R.C. 2950.05(A), we must examine the language of sections (A) and (B) in R.C. 2950.05.

¶{18} Section (A) states:

¶{19} "(A) If an offender * * * is required to register pursuant to division (A)(2), (3), or (4) of section 2950.04 * * *, the offender * * * shall provide notice of any change of residence, school, institution of higher education, or place of employment address, to the sheriff with whom the offender or delinquent child most recently registered the address under division (A)(2), (3), or (4) of section 2950.04 or 2950.041 of the Revised Code or under division (B) of this section. * * * [T]he offender * * * shall provide the written notice at least twenty days prior to changing the address of the residence, school, or institution of higher education and not later than three days after changing the address of the place of employment. They shall provide the written notices during the period they are required to register. If a residence address change is not to a fixed address, the offender * * * shall include in that notice a detailed description of the place or places at which the offender * * * intends to stay and, not later than the end of the first business day immediately following the day on which the person obtains a fixed residence address, shall provide that sheriff written notice of that fixed residence

address. If a person whose residence address change is not to a fixed address describes in a notice under this division the place or places at which the person intends to stay, for purposes of divisions (C) to (I) of this section, sections 2950.06 to 2950.13 of the Revised Code, and sections 311.171 and 2919.24 of the Revised Code, the place or places so described in the notice shall be considered the person's residence address and registered residence address until the person provides the written notice of a fixed residence address as described in this division."

¶{20} Division (B) states:

¶{21} "If an offender * * * is required to provide notice of a residence, school, institution of higher education, or place of employment address change under division (A) of this section, * * * the offender * * * at least twenty days prior to changing the residence, school, or institution of higher education address and not later than three days after changing the place of employment address, as applicable, also shall register the new address in the manner, and using the form, described in divisions (B) and (C) of section 2950.04 or 2950.041 of the Revised Code, whichever is applicable, with the sheriff of the county in which the offender's * * * new address is located, subject to division (C) of this section. If a residence address change is not to a fixed address, the offender * * * shall include in the registration a detailed description of the place or places at which the offender * * * intends to stay and, not later than the end of the first business day immediately following the day on which the person obtains a fixed residence address, shall register with that sheriff that fixed residence address. If a person whose residence address change is not to a fixed address describes in a registration under this division the place or places at which the person intends to stay, for purposes of divisions (C) to (I) of this section, sections 2950.06 to 2950.13 of the Revised Code, and sections 311.171 and 2919.24 of the Revised Code, the place or places so described in the registration shall be considered the person's residence address and registered residence address, until the person registers a fixed residence address as described in this division."

¶{22} While these two sections are very similar, they are separate offenses. Under division (A) an offender is required to register to provide written notice of any change of residence to the sheriff "with whom the offender * * * most recently registered the address" under R.C. 2950.04(A)(2), (3), or (4). R.C. 2950.05(A). Under this section the offender must register with the county he is currently living in of any

change of residence. Division (B), requires in addition to fulfilling the requirements in division (A), for the offender to register with the sheriff of the county where his new address is located twenty days prior to moving. R.C. 2950.05(B). Thus, a reading of this section appears to apply when the offender is changing his address to a different county. Therefore, in addition to registering in the county he is moving from, the offender must register in the county he is moving to. Division (B) also requires the notice to the sheriff of the new address to be done using a specific form. R.C. 2950.5(B).

¶{23} After reviewing those two divisions and seeing the differences between the two, we find that the indictment did in fact charge Watson with a violation of R.C. 2950.05(A). We hold as such for three specific reasons. First, despite Watson's insistence to the contrary, the phrase in the indictment "written notice of a residence address change" is not an indication of a violation of division (B) instead of division (A). That phrase merely means a written notice of change of address of residence. Division (A) uses the phrases "change of residence," "changing the address of residence," and "residence address change" to all discuss a change of residence address; these phrases are used interchangeably. Thus, it cannot be concluded that "written notice of a residence address change" can only mean division (B). Furthermore, as discussed above, the distinction between divisions (A) and (B) is whether the change of residence is to a different county; division (B) would only be applicable if the county of residence changed. This is obvious from a reading of the entire section, not from the generic phrase "written notice of a residence address change." Moreover, we note that although this exact argument has not been addressed before, our sister districts have stated that R.C. 2950.05(A) requires offenders to submit written notice of a residence address change. *State v. Pryor*, 5th Dist. No. 2007-CA-00166, 2008-Ohio-1249, ¶27-28; *State v. Beasley* (Sept. 27, 2001), 8th Dist. No. 77761. Thus, for those reasons it cannot be concluded that the phrase is solely a reference to division (B).

¶{24} Second, the indictment clearly states Watson failed "to provide written notice of a residence address change to the sheriff's office in Belmont County, Ohio, **the office with whom he had most recently registered**." 11/04/09 Indictment (Emphasis added). The emphasized portion clearly tracks the language of division (A) and can only be a reference to division (A). As aforementioned, division (B) discusses registering the change of address with the sheriff of the county in which the offender's

new address is located, while division (A) references notifying the sheriff with whom the offender most recently registered. Division (B) does not reference registering the change of address with the sheriff the offender most recently registered.

¶{25} Third, the indictment does not reference failing to use a form to register. That element is specific to division (B) and is not even mentioned in division (A). If the indictment had been attempting to charge a violation of division (B) a statement about the failure to use the appropriate form would likely have been included.

¶{26} Accordingly, for those reasons, we find that the indictment did charge Watson with a violation of R.C. 2950.05(A).

¶{27} Our analysis now turns to Watson's second argument that the indictment was defective because it incorrectly stated that the written notice of change of residence address had to be provided at least three days prior to the change. Watson contends that the statute requires twenty days written notice of a change of residence address.

¶{28} As previously stated, Watson did not object to the indictment prior to trial. Thus, this argument, which is asserting that the indictment is defective, is reviewed under a plain error analysis. To reverse a decision based on plain error, a reviewing court must determine that a plain (or obvious) error occurred that affected the outcome of the trial. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27. See Crim.R. 52(B).

¶{29} Clearly, as the above recitation of R.C. 2950.05(A) shows, the statute requires twenty days written notice of a change of residence address. The indictment's reference to three days instead of twenty is incorrect. That said, we do not find that the misstatement amounts to plain error.

¶{30} The Ohio Supreme Court held that "an indictment that charges a defendant with child endangering in violation of R.C. 2919.22(A) as a third-degree felony but does not contain language that the victim suffered serious physical harm adequately informs the defendant of the charge against which he must defend and is sufficient." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, ¶2. Thus, even though physical harm was an element of the offense of child endangering, the notification that it was a third-degree felony enabled the defendant to know that physical harm was an element the defendant would have to defend against. Id.

¶{31} Considering that the time limit is misstated, but is easily discoverable from reading R.C. 2950.05(A), the indictment provided adequate notice of the charge

against Watson and was sufficient. Furthermore, as will be discussed below, the evidence established that Watson did not provide any written notice to the sheriff prior to changing his address. Thus, Watson cannot show plain error; a conviction would still have resulted even if the indictment stated twenty days rather than three. Therefore, considering all the above, this assignment of error lacks merit.

SECOND ASSIGNMENT OF ERROR

¶{32} "THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY WHERE THAT FINDING IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{33} In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. Id. at 387. This is so because the trier of fact is in a better position to determine credibility issues, since he personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill* (1996), 75 Ohio St.3d 195, 204; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

¶{34} The testimony established that Watson registered his address with the sheriff as 4253 Pine Alley, Bellaire, Ohio on November 7, 2008 and January 19, 2009. (Tr. 28, 68, 112). On February 5, 2009, Watson's parole officer did a routine home visit to the residence and was informed by a Mr. Morris that Watson had not lived there since November 6, 2008. (Tr. 39). A couple of days later, the parole officer and a detective returned to residence and spoke to a Ms. Morris. She first indicated that Watson was living there, but later admitted that he was staying with the Warycks on Belmont Street. (Tr. 40-41). Mr. Waryck testified that Watson began living at his house in November and moved out sometime in January or February. (Tr. 66-67). Holly Anderson, who was also living at the Warycks, testified that Watson was living with the Warycks from November until around February. (Tr. 69-63). There was testimony that Ms. Morris and Ms. Waryck told investigators that Watson was not living

at the Warycks.  However, both women changed their story numerous times and were considered by the investigators to be unreliable.  (Tr. 90, 92).  The investigators concluded that Watson had changed his residence to the Warycks' residence, but had not registered that address with the sheriff.  (Tr. 90-96, 106, 113-114).

¶{35} Consequently, considering the evidence, there was competent credible evidence to find that Watson changed his residence address and did not register the change of address with the sheriff.  The trial court, as the trier of fact, was in the best position to determine witness credibility and determine which evidence to believe.  *Hill,* supra.  This assignment of error lacks merit.

## CONCLUSION

¶{36} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.