[Cite as *State v. Dzelajlija*, 2013-Ohio-4589.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95851

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

# JAMES DZELAJLIJA

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### CONVICTIONS AFFIRMED; REMANDED
### FOR RESENTECING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-478630

**BEFORE:** Kilbane, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Cullen Sweeney
John T. Martin
Assistant Public Defenders
310 Lakeside Avenue - Suite 200
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
T. Allan Regas
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** This cause is before this court on remand from the Ohio Supreme Court in *State v. Dzelajlija*, Slip Opinion No. 2012-0651, 2013-Ohio-3724, for further review of our decision released March 8, 2012,[1] on reconsideration. The Ohio Supreme Court, having reversed our judgment in this case, has remanded it to us with instructions to determine whether James Dzelajlija's convictions for two counts of robbery are against the manifest weight of the evidence. For the reasons set forth below, we conclude that the convictions are not against the manifest weight of the evidence. Accordingly, we affirm Dzelajlija's convictions and remand to the trial court for resentencing.

**{¶2}** These protracted proceedings stem from the September 30, 2005 robbery of a furniture store employee who was making a night deposit. On March 23, 2006, defendant, the boyfriend of a store employee, was indicted on two counts of robbery and receiving stolen property. A jury trial began on August 31, 2006, and the defendant was convicted of the robbery charges. He was sentenced to concurrent seven-year terms of imprisonment, plus five years of postrelease control. On appeal, this court determined that the trial court admitted inadmissible and prejudicial opinion evidence as to a witness's truthfulness and the case was reversed and remanded for a new trial. *State v. Dzelajlija,* 8th Dist. Cuyahoga No. 88805, 2007-Ohio-4050 (*"Dzelajlija I"*).

**{¶3}** A retrial began on February 12, 2008. The defendant was convicted of both robbery charges. He was again sentenced to a seven-year term of imprisonment and

a concurrent five-year term of imprisonment, plus three years of postrelease control, to be served consecutively to an unrelated conviction in Case No. CR-475938. On appeal, the defendant asserted that the indictments were defective under *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (*"Colon I"*) and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("*Colon II*"), and that his convictions were against the manifest weight of the evidence. This court concluded that the indictments were defective under *Colon I* and *Colon II* for failing to charge the defendant with the requisite mens rea of recklessness. Therefore, this court again reversed defendant's convictions and remanded the matter for a new trial. In light of that conclusion, this court held that the defendant's challenge to the weight of the evidence supporting his convictions was moot. *State v. Dzelajlija*, 8th Dist. Cuyahoga No. 91115, 2009-Ohio-1072 ("*Dzelajlija II*").

{¶4} On May 20, 2009, the matter was returned to the docket of the trial judge. On August 27, 2010, however, the Ohio Supreme Court overruled *Colon I* and *Colon II*, and held that where an indictment charges an offense by tracking the language of the criminal statute, it is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26.

{¶5} On September 14, 2010, the trial court held a hearing in this matter to determine the effect of the *Horner* decision. The trial court concluded that the *Horner*

---

[1]*State v. Dzelajlija*, 8th Dist. Cuyahoga No. 95851, 2013-Ohio-913.

decision constituted extraordinary circumstances that justified the reimposition of the sentence that had been imposed on February 21, 2008, without holding another trial. On appeal, this court concluded that under *Horner*, the trial court properly concluded that the robbery charges herein are not defective, but that the sentence could not be reimposed in light of the earlier challenge to the manifest weight of the evidence that had earlier been declared moot and had never been resolved. *State v. Dzelajlija*, 8th Dist. Cuyahoga No. 95851, 2011-Ohio-6445 ("*Dzelajlija III*").

{¶6} On March 8, 2012, this court granted the state's motion for reconsideration and ruled that, even though *Horner* had overruled the *Colon* cases, the structural error analysis from *Colon* was still applicable to this case. *State v. Dzelajlija*, 8th Dist. Cuyahoga No. 95851, 2012-Ohio-913 ("*Dzelajlija IV*").

{¶7} On discretionary appeal to the Ohio Supreme Court, the matter was reversed and remanded to this court stating:

> Dzelajlija's convictions were vacated in *Dzelajlija II* based on two cases from this court that we have repudiated. On remand, the trial court resentenced Dzelajlija. The sentence was improper because Dzelajlija's manifest-weight argument had not yet been resolved. Accordingly, we remand this case to the court of appeals with instructions to consider this outstanding issue.

{¶8} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 54, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211,

72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶9}** The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, quoting *Martin*.

**{¶10}** In this matter, William Bond ("Bond"), assistant manager of Elgin's Furniture Store, testified that shortly after 9:00 p.m., on September 30, 2005, he drove to National City Bank, directly across the street from the furniture store, to make the night deposit of $1,570.10 in cash, and $1,874.12 in checks. As Bond parked next to the night deposit box and got out of his car, an assailant in a black and white ski cap approached from behind a nearby dumpster. The assailant repeatedly punched Bond in the face and head, forcing him to the ground behind his car. Bond threw the bag of deposits toward the assailant who then fled.

**{¶11}** Bond immediately drove to the North Randall Police Department and gave a written statement regarding the robbery to Lieutenant Harry Rose ("Lieutenant Rose"). Bond sustained a large bruise to his right eye and a cut underneath his eye. He was treated by North Randall paramedics. Bond also testified that prior to the robbery, the

defendant had been to the furniture store on two occasions to speak with cashier Jennifer Martin ("Martin").

{¶12} Martin testified that she had worked as a cashier at Elgin's and was living with the defendant at the time of the robbery. The defendant visited her at work a couple of times per week as the store was closing for the evening. The defendant subsequently asked Martin where the store deposits were taken, and she told him that they were taken across the street to National City Bank. Shortly before the robbery, Martin came home from work and complained to the defendant that Bond had not helped her. The defendant then jokingly stated that he should rob Bond, and Martin replied that she did not think that was a good idea.

{¶13} Martin further stated that on the day of the robbery, the defendant's best friend, Bobby Jones ("Jones"), arrived at the store shortly before closing time and said something that caused her concern. When she arrived home later, the defendant and Jones were getting out of Jones's truck. Martin inquired about whether the defendant had gone ahead with the robbery, and he stated that he did not because a police car was parked nearby. A few minutes later, however, the defendant threw an envelope at her that contained an Elgin's bank deposit slip and $500 in cash. He reportedly told her that he had given the assistant manager a "shiner," and told her not to say anything. They then used the cash to purchase two money orders to pay their rent.

{¶14} When Martin arrived at work the next week, she saw that Bond had two black eyes. She did not report the matter to the police because she was in shock and

fearful of losing her job. Several weeks later, however, the police questioned her. Martin gave police a six-page statement regarding the robbery and information concerning the defendant. Several weeks later, on December 5, 2005, Martin recorded a phone message that the defendant left on her cell phone. In this call, the defendant informed her that he was the man who had robbed the store manager, and that he had spoken with the police and explained to them that she was not involved in the offense. The defendant then apologized to Martin, told her that he loved her, and apologized if his actions caused her to lose her job. Martin also told the jury that she had been charged with receiving stolen property, and that she participated in a diversion program. She further stated that the case against her is now resolved.

{¶15} During interviews with the North Randall Police Chief, Ronald Mosley, and Lieutenant Rose, the defendant at first denied knowing anything about the robbery. However, after learning that Martin may be indicted, he told the officers, "I did it, I robbed [Bond]." Bank surveillance photos depict an individual in the area shortly before Bond arrived at the bank. The police obtained no additional information regarding the identification or whereabouts of Jones.

{¶16} From the foregoing, we cannot say that the jury lost its way in convicting the defendant of the offenses. The record establishes that the defendant had been in the store prior to the robbery, expressed an interest in the deposits, and spoke of robbing the manager. On the date of the robbery, he gave Martin money and a store receipt. He also left a message for Martin in which he inculpated himself and stated that Martin was

uninvolved in the crime. The defendant did not present evidence. On this record, and weighing the evidence and all reasonable inferences, we are unable to conclude that the court clearly lost its way and created such a manifest miscarriage of justice in convicting the defendant of the robbery charges.

{¶17} The convictions are not against the manifest weight of the evidence.

{¶18} The judgment of the trial court is affirmed, and this case is remanded to the trial court for resentencing

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR