OPINION
{¶ 1} Defendant-appellant, Daniel Ripperger, appeals his convictions in the Butler County Court of Common Pleas for one count of robbery and one count of receiving stolen property. We affirm the convictions.
 {¶ 2} On a Friday afternoon in February 2007, Ripperger walked into the West Chester branch of PNC Bank with his hands in his pocket and stood in line to be waited on. *Page 2 
After the teller beckoned him over, Ripperger handed her a note which read "this is a hold up give me the money from your drawer." In total, the teller removed $1,220 from her drawer, along with "bait money" comprised of four authentic 20 dollar bills in which was hidden a GPS tracking device. The moment the teller removed the bait money from her drawer, the bank's security team was notified via a silent alarm system. After Ripperger left the bank, the teller informed management of the robbery and locked the bank's door for security purposes.
 {¶ 3} PNC's security team tracked the bait money and relayed the location to the West Chester Police Department. Security also emailed photographs of the robber to the detectives who soon began a man-hunt in the area surrounding the bank. Based on the GPS tracking indication, the police shut down a strip of road near the bank and soon stopped Ripperger because he met the robber's description as supplied to the police by the bank's security team. Ripperger, after stating that he was coming from a gas station where he had purchased a pack of gum, permitted the police to search his truck. The police located the bait money, then applied for and were granted a warrant to search the truck fully. The search resulted in seizure of the remaining money stolen from the bank, black markers such as those used to write the note, an unfinished draft of the hold-up note, a BB gun and pellets, as well as the Boston Red Sox hat worn by the robber during the robbery.
 {¶ 4} Ripperger was indicted on one count of robbery and one count of receiving stolen property. After withdrawing his not guilty by reason of insanity plea, a jury found Ripperger guilty on both counts after a two-day trial. It is from these convictions that Ripperger now appeals, raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE INDICTMENT CHARGING RIPPERGER WITH ROBBERY FAILED TO CHARGE A MENS REA ELEMENT, AND [sic] ESSENTIAL ELEMENT OF THAT CRIMINAL CHARGE, AND HENCE HIS CONVICTION ON SAID CHARGE IS VOID AB INITIO." *Page 3 
 {¶ 7} In his first assignment of error, Ripperger argues that his conviction for robbery must be overturned because the indictment which charged him with the crime failed to state that the mens rea for robbery is recklessness. This argument lacks merit.
 {¶ 8} Because Ripperger argues that his defective indictment constituted a structural error, we begin our analysis with a review of the applicable law pursuant to State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I") and the Ohio Supreme Court's clarification of that decision in State v. Colon,119 Ohio St.3d 204, 2008-Ohio-3749 ("Colon II"). In Colon I, Colon was convicted, after a jury trial, on one count of robbery in violation of R.C. 2911.02(A)(2). The indictment by which Colon was charged parroted the statutory language but did not list a mental state or otherwise indicate that a reckless mens rea applied to the purported crime. During Colon's trial, the state did not offer evidence to prove that Colon acted with any mental state and further proceeded during closing arguments as if robbery was a strict liability crime. Additionally, the trial court did not make mention of any applicable mental state in the jury instructions or that the state had the burden to prove that Colon acted with recklessness during the commission of his crime in order to fulfill the statutory requirements.
 {¶ 9} Based on these errors, the court in Colon I
reversed Colon's convictions because it found that the missing mental state and subsequent failure of the state and trial court to inform the jury of the mens rea requirement constituted structural errors. Because the errors "permeated the entire conduct of the trial from beginning to end so that the trial [could] not reliably serve its function as a vehicle for determination of guilt or innocence," Colon was permitted to argue the defect for the first time on appeal instead of being held to plain error scrutiny. Id. at ¶ 20.
 {¶ 10} In Colon II, the court emphasized that its holding in Colon I was fact-specific and that a structural error does not automatically result any time the indictment fails to list the *Page 4 
required mental state. Instead, the court reiterated the errors that occurred during Colon's indictment and trial which formed the basis for its reversal in Colon I, then stated that "in a defective-indictment case that does not result in multiple errors that are inextricably linked to the flawed indictment such as those that occurred in Colon I, structural-error analysis would not be appropriate." 2008-Ohio-3749 at ¶ 7.
 {¶ 11} The court then concluded its analysis by stressing that "applying structural-error analysis to a defective indictment is appropriate only in rare cases; such as Colon I, in which multiple errors at the trial follow the defective indictment. * * * Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8.
 {¶ 12} Based on Colon I and the clarification offered in Colon II, we must first decide whether the indictment in this case was defective and if so, whether the results of that defective indictment constituted a structural error. If so, the fact that Ripperger did not object to the defective indictment at trial will not foreclose his ability to argue that point for the first time in this appeal. If, however, the defective indictment and subsequent acts by the state and trial court did not constitute a structural error, we will analyze the error pursuant to Crim. R. 52(B).
 {¶ 13} The court in Colon I and Colon II set forth four factors it considered before reaching the conclusion that a structural error occurred: "(1) the indictment violated the constitutional right to indictment by grand jury by failing to list all elements of the crime charged; (2) the defendant had no notice that the state was required to prove that he had acted recklessly; (3) the state did not argue at trial that the defendant had acted recklessly, nor had the jury been instructed that it had to find the defendant's conduct reckless in order to convict him; and (4) the prosecutor had treated robbery as a strict liability crime in closing argument." State v. Robertson, Franklin App. No. 08AP-15, 2008-Ohio-6909, ¶ 11. *Page 5 
 {¶ 14} Regarding the indictment, Ripperger was charged with one count of robbery in violation of R.C. 2911.02(A)(3)[1] which states "no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: use or threaten the immediate use of force against another." Because no mental state is explicitly set forth in the statute, the state must prove that the accused recklessly used or threatened the immediate use of force against the victim of his robbery. See State v. Jones, Mahoning App. No. 07-MA-200,2008-Ohio-6971, ¶ 20 (citing R.C. 2901.21(B) "when the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense").
 {¶ 15} The indictment which charged Ripperger with one count of robbery stated in full, "on or about February 16, 2007, at Butler County, Daniel B. Ripperger did in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, use or threaten the immediate use of force against another, which constitutes the offense of ROBBERY, a Third Degree Felony, in violation of R.C. § 2911.02(A)(3), and against the peace and dignity of the State Of Ohio." Given that the indictment failed to list the required mental state of recklessness, we agree with Ripperger that the indictment was defective.
 {¶ 16} We turn our attention now to whether the defective indictment led to other errors which permeated the entire conduct of the trial so that it could not reliably serve its function as a vehicle for determination of Ripperger's guilt or innocence.
 {¶ 17} The court in Colon I and Colon II pointed out secondly that Colon had no notice that the state was required to prove that he acted recklessly in the commission of the crime for which he was charged. Unlike Colon, however, Ripperger was given ample notice that *Page 6 
the state was required to prove that he acted with recklessness while robbing the PNC bank. Specifically, the state provided Ripperger with a bill of particulars which detailed the robbery charge. "On or about February 16, 2007, at approximately 2:20 pm, at PNC Bank * * * Daniel B. Ripperger did in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, use or threaten the immediate use of force against another, to wit: with purpose to deprive PNC Bank of $1,220 cashknowingly obtain or exert control over said money without the consent of PNC bank * * *." (Emphasis added.) While the bill of particulars did not list recklessness as the mental state specific to using or threatening the use of force, the bill did expressly notify Ripperger of the state's burden to prove that he acted purposely or knowingly during the robbery. As purposely or knowingly are more stringent mental states to prove, Ripperger was placed on notice that the state was required to prove that he acted with the requisite mental state. See Jones, 2008-Ohio-6971 at ¶ 67
(recognizing that "knowingly is a more difficult mental state to prove than recklessly").
 {¶ 18} While it is true that Ripperger's indictment did not mention a mental state, "the purpose of the bill of particulars is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." State v. Fowler
(1964), 174 Ohio St. 362, 364. Although not the charging instrument, Ripperger's bill of particulars did place him on notice that the state did not consider the crime a strict liability offense and that it was prepared to offer evidence regarding the mental state with which Ripperger acted.
 {¶ 19} It is also clear from Ripperger's closing argument that he had notice that the state was required to prove he acted with recklessness in imposing the threat or use of force during the robbery. After arguing that the state failed to prove that Ripperger actually committed the robbery, counsel argued that even if the jury decided that Ripperger was the robber, the state failed to prove that Ripperger's actions constituted a threat or use of force. In trying to persuade the jury that Ripperger never had the intention to threaten or use force *Page 7 
against the teller, counsel told the jury to consider the "demeanor as well as the demands that might be made by the person who is committing the offense. Again, what the testimony was [though] was that the note was simply passed, no words were spoken. No direct threats were made, there was the — obviously the statement that this is a hold up but again in terms of what training [the teller] may have received with respect to the assumption is to go ahead and comply[.] [W]e argue that there is some reasonable doubt as to the essential element itself of the threat to the use of immediate force."
 {¶ 20} According to this argument, Ripperger knew that the state had to prove that his mental state during the robbery; whether it was purposeful, knowing, or reckless, caused him to use or threaten the use of immediate force. Ripperger asked the jury to consider his argument that his choice of words "hold up" on the note or that he held his hand in his pocket was not intended as a threat. In order to do so, the jury would have had to have considered Ripperger's mental state during the robbery in order to determine whether he used or threatened the use of force by choosing the words "hold up" and by keeping his hand in his pocket to mimic possession of a gun, and what he was thinking by choosing those actions.
 {¶ 21} Third, the court in Colon I and Colon II
considered the fact that the state did not argue at trial that Colon had acted recklessly, nor had the jury been instructed that it had to find his conduct reckless in order to convict him.
 {¶ 22} Here, the state put on evidence during Ripperger's two-day trial which demonstrated that Ripperger acted, at the very least, recklessly by using or threatening the use of force. During the bank-teller's testimony, the jury heard evidence that Ripperger gave her a note indicating that it was a hold up and that based on her 14 years of banking experience and training, the words "hold up" meant that the robber had a gun. The jury also heard testimony that Ripperger kept one hand in his coat pocket at all times, further indicating that he carried a concealed weapon. This testimony offered evidence that Ripperger acted, at *Page 8 
the least, recklessly by choosing the specific words "hold up" on the note to denote that he had a gun and by keeping his hand in his pocket, representing that he had a gun, as a way to use or threaten the immediate use of force against the teller during the robbery. See State v. Easter, Montgomery App. No. 22487, 2008-Ohio-6038, ¶ 25 (affirming defendant's conviction for one count of robbery in violation of R.C. 2911.02(A)(3) where indictment failed to list recklessness as the requisite mental state but the court heard testimony from the investigating officer that appellant walked into the store with his hand in an umbrella, said he had a gun, and demanded money, therefore proving that appellant "purposely or knowingly threatened the immediate use of force against the store clerk").
 {¶ 23} Additionally, unlike Colon, Ripperger's jury received instructions from the court regarding mental states with which he had to act in order to be found guilty. Under count one, robbery, the instructions explain that before the jury could find Ripperger guilty, it had to agree that he "did in committing a theft offense or in fleeing immediately after the offense, use or threaten the immediate use of force against another, specifically: with purpose to deprive PNC Bank of $1,220.00 cash knowingly obtain or exert control over said money without the consent of PNC Bank * * * This offense is known as robbery." While it is true that the instructions did not contain a separate section detailing recklessness specific to the threat or use of force, the jury was instructed that Ripperger could not have been found guilty of robbery without first deciding that he acted purposely and knowingly throughout the commission of his crime.
 {¶ 24} The instructions also defined "knowingly" and instructed the jury that "you will determine from these facts and circumstances whether there existed at the time in the mindof the Defendant an awareness of the probability that he was obtaining or exerting control over the $1,220.00 in cash without the consent of PNC Bank * * *." (Emphasis added.) Immediately following this definition, the court defined theft as "knowingly obtaining cash with purpose to deprive the owner of such property," and later defined purposefully as "specific *Page 9 
intention to cause a certain result." Based on these instructions, the jury was not under the misapprehension that the state considered robbery a strict liability offense.
 {¶ 25} As already discussed, proving a defendant had a knowing or purposeful mental state is a stricter burden for the state to carry. The jury instructions were provided to ensure that the state be held to a burden that included proving Ripperger's mental state during the commission of his crime. The jury finding that Ripperger's acts were purposeful or knowing surpassed the recklessness the state actually had to prove in regard to the use or threat of use of force, and further demonstrated that the state offered evidence at the trial which spoke directly to Ripperger's mental state.
 {¶ 26} Lastly, the prosecutor in Colon's trial treated his crime as a strict liability offense in the closing arguments. Here, however, the state's closing argument makes reference to Ripperger's intent and purpose during the robbery and whether he intended his actions to cause the use or threat of use of force. If the state had treated the crime as a strict liability offense, it would not have needed to discuss the thought process behind Ripperger's actions or what his intent was when he approached the teller.
 {¶ 27} Instead, the prosecutor used closing arguments as a way to review the evidence relating to Ripperger's mental state during the robbery. "He didn't say anything. He slipped her a very simple note. Simple in the sense of its intent." Later, the prosecutor reminded the jury that "theft requires that with the purpose to deprive" Ripperger took the money and "he certainly wasn't planning on giving it back to them. His intent was to keep on going * * *" The prosecutor dealt with the use or threat of use of force during the robbery by reiterating that the "note itself demonstrates his intent. The note itself conveyed to [the teller] very clearly the intent and caused the exact response that he wanted * * *." Additionally, the prosecutor concluded his argument by reminding the jury that based on the evidence presented at trial, it should conclude that Ripperger "entered the PNC Bank on that Friday afternoon with the *Page 10 
purpose not only to deprive them of property, but to do so by threat of force against the teller."
 {¶ 28} Though the state did not have the duty to prove that Ripperger acted other than recklessly, it couched its closing argument in terms of having to prove a higher mental state and the prosecution did not treat the robbery as a strict liability offense.
 {¶ 29} Given that the facts in the case at bar differ from those in Colon I, and mindful of the limited application as set forth in Colon II, we cannot say that the defective indictment resulted in multiple errors that were inextricably linked to the flawed indictment. It is therefore improper to review this case using a structural error analysis. Instead, because Ripperger failed to challenge his indictment at trial, he has waived that argument on appeal except for plain error.
 {¶ 30} According to Crim. R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless, but for the error, the outcome of the trial would have been different. State v. Waddell, 75 Ohio St.3d 163, 166,1996-Ohio-100. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quoting State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 31} Here, the fact that Ripperger's indictment was defective does not constitute plain error. Instead, there is nothing on the record that indicates that had the indictment specifically listed the mental state as reckless, the outcome of his trial would have been different. As thoroughly discussed above, the jury heard evidence that Ripperger acted knowingly or purposefully and was instructed on each of those mental states. Both mental states are a stricter mens rea than recklessness and a guilty verdict based on either mental state would satisfy the state's burden to prove that Ripperger acted recklessly when he robbed the bank.
 {¶ 32} Additionally, the jury considered ample evidence of Ripperger's guilt including *Page 11 
the surveillance tape, the bait money found in his truck along with a draft of the hold up note. At trial, Ripperger tried to discount the effectiveness of the GPS unit, used closing arguments to ask the jury to consider that someone else could have robbed the bank, and argued that even if it was Ripperger, he had not intended to use any real threat of force during the robbery. The jury, however, after considering the overwhelming evidence against Ripperger, found that the state carried its burden, including self-imposed mental states of purposefully and knowingly. Therefore, even if the indictment had listed a reckless mental state specific to the use or threat of use of force, there is nothing to indicate that Ripperger would have been acquitted.
 {¶ 33} Having found that the defective indictment did not constitute a structural error, and that no plain error existed which calls for reversal of his conviction, Ripperger's first assignment of error is overruled.
 {¶ 34} Assignment of Error No. 2:
 {¶ 35} "RIPPERGER WAS DENIED HIS RIGHT TO A FAIR TRIAL BECAUSE OF THE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL."
 {¶ 36} In his second assignment of error, Ripperger argues that he was denied a fair trial because his trial counsel failed to object to the deficient indictment. We disagree.
 {¶ 37} While the Sixth Amendment pronounces an accused's right to effective assistance of counsel, judicial scrutiny of an ineffective assistance claim must be "highly deferential" to avoid viewing counsel's actions in hindsight. Strickland v.Washington (1984), 466 U.S. 668, 689, 104 S.Ct. 2052. WithinStrickland, the Supreme Court established a two-part test which requires an appellant to demonstrate that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." State v. Myers, Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing Strickland. *Page 12 
 {¶ 38} Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because the appellant must prove both prongs, a reviewing court need not address the deficiency issue if appellant was not sufficiently prejudiced by counsel's performance. Id. at 697.
 {¶ 39} Ripperger asserts that he did not receive effective assistance because his trial counsel failed to object to the defective indictment and to the jury instructions which did not plainly state that recklessness was the required mental state. However, even if counsel's failure to object was deficiency which fell below an objective standard of reasonableness, Ripperger is unable to demonstrate that but for counsel's failure to object to the indictment, the result of his trial would have been different. As we have already found, the deficient indictment did not constitute either a structural or plain error, and nothing on the record indicates that had counsel objected to the indictment, Ripperger would have been acquitted.
 {¶ 40} As Ripperger is unable to demonstrate that but for his counsel's failure to object to the indictment at trial he would have been acquitted, Ripperger was not denied effective counsel so that his second assignment of error is overruled.
 {¶ 41} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] While the holdings in Colon I and Colon II were specific to robbery in violation of R.C. 2911.02(A)(2), courts have found that the same analysis applies to an indictment that charges a violation of R.C. 2911.02(A)(3) as well. See e.g.Robertson, 2008-Ohio-6909. *Page 1