[Cite as *State v. Tolliver*, 2013-Ohio-115.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24716 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-2996 |
| v. | : | |
| | : | |
| KEVIN D. TOLLIVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. #0074329, Murr, Compton, Claypoole & Macbeth, 401 East Stroop Road, Kettering, Ohio 45429-2829
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Kevin Darvon Tolliver appeals from his conviction and

sentence for Robbery, in violation of R.C. 2911.02(A)(3), a felony of the third degree. He contends that the trial court committed plain error when it failed to instruct the jury on recklessness as the mens rea applicable to the element of the use, or threat of immediate use, of force against a person. We agree. The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

### I. Tolliver Leaves a Dollar General Store with Stolen Merchandise

{¶ 2}   Jasmine Jordan, an assistant manager at a Dollar General store, saw Tolliver enter the store empty-handed, one day in September, 2010. Later, she saw Tolliver in a confrontation with Sean Fields, a store employee. Tolliver had Dollar General bags full of t-shirts, socks, and underwear, which Fields was asking him to give back. Tolliver said that he had come in with the merchandise, and was attempting to return it.

{¶ 3}   Jordan told Tolliver that she would take the merchandise and do the return, intending thereby to regain possession of the merchandise. Tolliver said he did not have his receipt with him, and began to leave the store with the merchandise. Jordan described what happened next as follows:

> A.  I am still standing, you know, face to face and I do – I put my arms out like this trying to get him to stop walking. And I'm pushed out of the way. And I push him back. And he raises his fist back like he's going to punch me in my face.
>
> Q.  Okay. Let me back up a little bit. When you put your arms out, what are you doing? Why did you put your arms out like that?
>
> A.  Because I was trying to get him to stop and talk.

Q.  Okay.   And why was that?

A.  So I could try and get the stuff back.   I was being calm and I was trying to get him to calm down.   And, you know, and talk.

Q.  And again, is this Defendant saying anything to you at that time?

A.  That he's not giving the merchandise back.   He's not going to give it to me.

Q.  And when you indicated that you were pushed out of the way, could you describe that push?

A.  Yes.   I was standing in the doorway.   And he shoved me.   I did go back a little, but he didn't – it wasn't – it was kind of a powerful push, it was enough to move me out of the way.

Q.  Okay.   Could you describe what Defendant used to push you?

A.  His hands.

Q.  One hand or two hands?

A.  Two hands.

Q.  You said it was enough to move you out of the way.   What does that mean?

* * *

THE WITNESS: When he pushed me I was standing in the doorway.   And he knocked me back into the vestibule.

{¶ 4}   Jordan clarified that she was standing in the inner doorway, between the vestibule and the interior of the store, when she was shoved into the vestibule.   Jordan

continued:

> Q.  What happens after the push?
>
> A.  I push him back.
>
> Q.  Which direction is the Defendant facing when you push him?
>
> A.  He is facing towards the door.
>
> * * *
>
> Q.  And what happens at that point when you push him back?
>
> A.  His fist goes back and it looked as if he was getting ready to punch me in my face.   And Sean Fields comes in between and pushes us both back.

{¶ 5}    Tolliver made his way out of the store with the merchandise.

{¶ 6}    Tolliver testified in his own defense.  He admitted that he was shoplifting, and that he told Fields and Jordan, falsely, that he was there to return the merchandise for credit.   He initially described the confrontation as follows:

> I'm like, "You know what, ma'am, I'm all right.   I – you know, I go get my receipt."   I'm trying to go.   So as I'm walking, she jumps in front of [sic] and we make contact.   And so when we make the contact, she steps backs [sic] and, you know, push me.   So I had to – you know, I'm like, man, what's – you know, I come back like this off of the push, and when they fall back I leave.
>
> And so I'm like – I'm like at that point I just – I'm kind of like wired up, like all – because of the extra static.   She just offered me, you know, exchange for the stuff and I was declined it.   So I felt like I was free to go, you know.   And as a result of that, all the other stuff came into play.   That's – you know, and like I was saying in

my opening statement, that a crime had been committed but not the crime in question based on how that was going on. I wasn't in there to cause no extra friction and stuff. If they would have ask – see, with the bag – took the bags or whatever, it would have just been that, you know. But that's pretty much.

BY MR. CLOUD [defense counsel]:

Q. So when they told you you were free to go –

A. Yes, sir.

Q. – and they tried to stop you –

A. They – they – in actual – being honest, they never told me I was free to go, per se. They just offered me to in-store credit. I declined it and I said, "Well, I go get my receipt," I'm just trying to leave with this – you know, go on about my business. I said – when I asked – she said, "I'll give you in-store credit," I said, "No, I'll go get my receipt."

She said, "Well, hold on" – because I wanted to get cash. She said, "Hold on, I give you cash," trying to convince me to take cash.

Q. Now when –

A. I'm like, "Ma'am, I" – you know, I don't got my receipt. I'm trying to go ahead and go, you know, and she's –

* * *

Q. Why do you say you didn't use force?

A. Because I didn't. I was just trying to leave. I never was in nor [sic] forceful manner. I wasn't like when they pulled up on me – when they asked me, I

wasn't like freak out and try to bust out of the store. You know, I didn't do that. You know, I said what I said, and they gave me the response they gave me. It's like it was all right you know, but they – but the action of standing up and getting in front of me was like – like – it's like, would the fish take the bait if he knew there was a hook on it. You know what I mean?

It was like – you know what I'm saying? I – I didn't – I knew I – you know, this was it, man. I was just trying to leave the store, man. I wasn't trying – I didn't – you know, didn't have no intentions of using no force. I didn't recklessly use force. I was trying to leave. They came onto me like, you know – and trying to force me to take the cash.

**{¶ 7}** On cross-examination, Tolliver testified that his arm motion, which Jordan had described as his cocking his fist, was a defensive reaction to his having been pushed, and was not intended as a threat.

## II. The Course of Proceedings

**{¶ 8}** Tolliver was charged by indictment with Robbery (use of force), in violation of R.C. 2911.02(A)(3). Specifically, the indictment charged that Tolliver: " * * * in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did recklessly use or threaten the immediate use of force against another, to-wit: **JASMINE JORDAN**; * * * ."

**{¶ 9}** At trial, Tolliver admitted to having committed the theft of the merchandise, but denied that he intended to use or threaten force against Jordan, or that he was reckless in

that regard. The jury was not instructed that Tolliver had to have any particular mental state of culpability with respect to the use or threatened use of force element of the offense, and defense counsel did not request any instruction along those lines.

{¶ 10} In its closing argument, the State alluded to the lack of a requirement of a culpable mental state, at least concerning an intent to cause injury or harm:

> And basically what you have here is the Defendant, when he is trying to leave, uses that force. He uses that compulsion. He moves her out of the way. He's trying to get away. He – you'll notice nowhere in the instructions does it say he had to have a purpose to hurt her or to cause her injury at all. It just – he had to have used any form of compulsion or constraint, and that's what he did when he put on [sic] his hands on her to move her out of the way so he could complete the theft. So he used force against her right when he pushed her.

{¶ 11} The State claimed in closing argument that Tolliver admitted, " 'Yeah, when I cocked my arm back it was to threaten her,' because he said, 'Well, I felt threatened.' " We have reviewed the transcript, however, and Tolliver never admitted that he had a purpose to threaten Jordan, despite the State's attempts to get him to so admit.

{¶ 12} The State then argued to the jury:

> * * * . And that's because there isn't any kind of – you don't have to knowingly do it. It's – frankly, if you do this at all during a theft offense, use any compulsion or threat of violence that's sufficient under the law of Ohio to – to be a robbery. Whether you think that's right or not, that's what the law is. That's something that the state of the law is. For whatever reason, that's what the law is.

{¶ 13} The jury found Tolliver guilty as charged. Tolliver was sentenced to four years, to be served consecutively with a sentence in another case. He was also ordered to pay $100 in restitution to Dollar General.

{¶ 14} From his conviction and sentence, Tolliver appeals.

### III. Recklessness Is the Mens Rea Applicable to the Element of the Use or Threatened Use of Force in a Prosecution for Robbery Under R.C. 2911.02(A)(3)

{¶ 15} Tolliver's sole assignment of error is as follows:

APPELLANT WAS PREJUDICED BY THE OMISSION OF AN ELEMENT OF THE CHARGED OFFENSE IN THE JURY INSTRUCTIONS, THEREBY DENYING THE APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 [sic], SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶ 16} Tolliver relies upon *State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (*Colon I*), and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 (*Colon II*), for the proposition that recklessness is the requisite mens rea for the element of the use or threatened use of force in a prosecution for Robbery. The conviction under review in *Colon I* was for Robbery in violation of R.C. 2911.02(A)(2), in which the element of the offense in addition to the commission or attempted commission of a theft offense is to: "Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" The Supreme Court held that the required mens rea for this additional element is recklessness. *Colon I*, at ¶ 11-15. Because the indictment in that case failed to allege recklessness in connection with

the element of physical harm, there was structural error, which required reversal even though the defendant had not challenged the sufficiency of the indictment in the trial court. *Colon I*, at ¶ 32.

{¶ 17}  *Colon I* was reconsidered in *Colon II*.  In reconsideration, the Supreme Court of Ohio held that in a defective-indictment case, unless there are "multiple errors that are inextricably linked to the flawed indictment," as occurred in that case, the proper analysis is a plain-error analysis, rather than a structural-error analysis, when the defendant has not challenged the indictment in the trial court.  *Colon II*, at ¶ 7-8.  The Supreme Court cited as the multiple errors justifying a structural-error analysis in that case the additional facts that the State had not argued that the defendant's conduct was reckless, but treated Robbery as a strict-liability offense, and that the trial court did not include recklessness as an element of the crime in its instructions to the jury.  *Id.*, at ¶ 6.

{¶ 18}  The State notes that in *State v. Horner,* 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, a decision post-dating appellate cases cited by Tolliver, the Supreme Court of Ohio overruled *Colon I* and *Colon II*.  But *Horner*, at ¶ 45, only overruled that aspect of those cases that held that an indictment tracking the language of the criminal statute describing the offense, but lacking a mens rea element of the crime, is defective:

> Today we recognize the confusion created by *Colon I* and *II* and hold that when an indictment fails to charge a mens rea element of the crime, but tracks the language of the criminal statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is, therefore, not defective.  *See State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162 (an

indictment that does not identify the elements of a predicate offense provides adequate notice by citing the statute defining the predicate offense). * * * . In fact, *Colon I* is overruled, and *Colon II* is overruled to the extent that it holds that such an indictment is defective.

{¶ 19} Curiously, as noted by Justice Pfeiffer in his dissent in *Horner*, it was unnecessary in that case to reach the question of whether an indictment that omits a mens rea element, but tracks the language of the statute, is defective. In *Horner*, the convictions under review were for Aggravated Robbery, in violation of R.C. 2911.01(A)(3), which, in addition to containing the element of committing or attempting to commit a theft offense, includes the additional element to: "Inflict, or attempt to inflict, serious physical harm on another." The Supreme Court held that no mens rea was required for this additional element – as to that element, Aggravated Robbery is a strict-liability offense. *Id.*, at ¶ 53. Thus, even if the indictment in that case had been required to include applicable mens rea elements, it was not missing any; no mens rea element applied to the infliction-of-serious-physical-harm element. Therefore, the Supreme Court would have reached the same result, even without overruling *Colon I* and *Colon II*.

{¶ 20} The net result of *State v. Horner, supra,* leaves the case before us in a legal vacuum. *Horner* involved a conviction for Aggravated Robbery, not Robbery, and it did *not* overrule that part of *Colon I* holding that recklessness is the mens rea required for the R.C. 2911.02(A)(2) element of infliction of physical harm, or an attempt to inflict harm, or a threat to inflict harm. Furthermore, neither *Horner*, nor *Colon I* and *Colon II* involved the offense at issue in the case before us, Robbery in violation of R.C. 2911.02(A)(3), which requires the

element (in addition to Theft) of the use of force against another, or the threat of immediate force against another. Notably, there is no corresponding additional element in the Aggravated Robbery statute.

{¶ 21} That the General Assembly regards a Robbery under R.C. 2911.02(A)(3) as distinct from Robbery under either division (A)(1) or (A)(2) of the statute is apparent from the fact that Robbery under division (A)(3) is a felony of the third degree, while a Robbery under either of the other divisions of the statute is a felony of the second degree. The distinction lies in the extent of the risk of physical harm to a person posed by the different offenses. A Robbery under R.C. 2911.02(A)(1) involves a theft offense committed while the offender has a deadly weapon on or about his person, or under his control. Obviously, this offense involves a substantial risk of physical harm to a person or persons. A Robbery under R.C. 2911.02(A)(2) involves a theft offense in which the offender inflicts, attempts to inflict, or threatens to inflict, physical harm on another. Here, too, there is a substantial risk of physical harm to a person or persons.

{¶ 22} The use, or the threat of immediate use, of force against another – the additional element under R.C. 2911.02(A)(3) – may or may not pose a substantial risk of physical harm to another, depending upon the degree of force involved. The risk of physical harm is, generally speaking, less with regard to an (A)(3) Robbery. And, of course, it is much less than the risk of physical harm in an Aggravated Robbery under R.C. 2911.01(A)(3), which has as the additional element to Theft, the infliction, or attempt to inflict, serious physical harm on another – the offense involved in *State v. Horner, supra*. Noticeably missing from this additional element is the mere *threat* to inflict physical harm on another,

which is part of the additional element for a Robbery under R.C. 2911.02(A)(2) – the offense involved in *Colon I* and *Colon II*.

{¶ 23} The risk of physical harm is a significant part of the *Horner* analysis:

Accordingly, under the [*State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428]/[*State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242] approach to applying R.C. 2901.21(B), in defining the offense of serious-physical-harm aggravated robbery, R.C. 2911.01(A)(3) "plainly indicates a purpose to impose strict liability." It is clear that the General Assembly intended R.C. 2911.01(A)(3) to hold persons responsible for aggravated robbery *because of the heightened potential for even accidental physical harm that results from the commission of the robbery*.

The section defining the offense – R.C. 2911.01 – specifies "knowingly" as a mens rea for the crime defined in division (B) of that statute, and R.C. 2911.01(A)(3) includes as an element an underlying theft offense, which itself includes a mens rea. Additionally, R.C. 2911.01(A)(3), defining the offense of serious-physical-harm aggravated robbery, plainly indicates a purpose to impose strict liability. Accordingly, R.C. 2911.01(A)(3) does not require proof of a mental state, and an indictment that does not identify a mental state is not defective. *State v. Horner, supra,* at ¶ 52-53 (emphasis added).

{¶ 24} In short, as we understand the rationale in *Horner*, the General Assembly intends that a person who actually inflicts, or who attempts to inflict, serious physical harm upon another, while committing a Theft offense, should be punished for Aggravated Robbery,

regardless of his or her intent to injure the other person. Actually, conviction for an attempt to commit an offense necessarily involves the mens rea of purposely or knowingly. R.C. 2923.02(A). Therefore, under *Horner*, the only instances in which someone could be convicted of an Aggravated Robbery under R.C. 2911.01(A)(3) as a strict-liability offense are those in which the offender has, in fact, inflicted serious physical harm on another in attempting to commit a Theft offense. We understand *Horner* to stand for the proposition that if an offender commits a Theft offense, the offender accepts the risk that if the commission of that offense proximately results in the infliction of serious physical harm on another, the offender will be criminally liable for Aggravated Robbery. It is the serious physical harm resulting from the train of events set in motion by the offender's commission of the Theft offense that makes the offender guilty of Aggravated Robbery as a strict-liability offense, regardless of the offender's lack of an intent to injure.

{¶ 25} By contrast, in the case before us, no physical harm to Jordan, or to anyone else, was alleged, nor is there any evidence in the record that anyone suffered physical harm, serious or otherwise. In other words, the dire consequence of the offender's commission of a Theft offense – serious physical harm, which animated the Supreme Court of Ohio to hold, in *Horner*, that the offense in that case was a strict-liability offense, is missing in the case before us.

{¶ 26} The issue is close. We hold that the mens rea applicable to the additional element of Robbery under R.C. 2911.02(A)(3) – the use, or the threat of the immediate use, of force against another – is that of recklessness. That element was not submitted to the jury, and the State argued, in closing argument, that no recklessness was required, although it did

argue, incorrectly, that Tolliver had admitted, in his testimony, that he had intended to threaten Jordan.

## IV. The Failure to Submit an Element of the Offense
## to the Jury Constitutes Plain Error

{¶ 27} Tolliver acknowledges that he did not request that the jury be instructed on the element of recklessness, did not object to the failure of the trial court's charge to the jury to include that instruction, and did not object to the State's argument that it was not required to prove mens rea in connection with the use, or threat of use, of force against another. Therefore, unless the structural-error analysis adopted in *Colon I* applies, this assignment of error must be analyzed under a plain-error analysis. Because we conclude that the omission of an element of the offense from the instructions to the jury does constitute plain error, we will assume, for purposes of analysis, that a plain-error analysis applies to this issue, not a structural-error analysis.[1]

{¶ 28} The failure to instruct a jury concerning an essential element of a charged offense is a serious error, since it effectively removes that element of the offense from the jury's consideration. If the jury is not instructed that it must find the element beyond reasonable doubt to convict, it cannot be presumed from a verdict of guilty that the jury did, in fact, find the essential element beyond reasonable doubt.

---

[1] An argument can be made, under *Colon I*, that a structural-error analysis applies. As in that case, the jury was not instructed concerning the element of recklessness, and the State argued that proof of recklessness was not necessary, treating the offense as a strict-liability offense. Unlike *Colon I*, the indictment in this case charged recklessness. The State argues that this was mere surplusage, the result of uncertainty brought on by *Colon I* and *II*, with *Horner* only having been decided two months before the indictment in this case.

{¶ 29} Tolliver cites three cases for the proposition that the failure to instruct a jury concerning an essential element of a criminal offense is always plain error, since it effectively deprives the defendant of his full right to a jury trial: *State v. Collins*, 88 Ohio App.3d 291, 623 N.E.2d 1269 (2d Dist. 1993); *State v. Endicott*, 99 Ohio App.3d 688, 694-695, 651 N.E.2d 1024 (6th Dist. 1994); and *State v. Stacy*, 12th Dist., Butler No. CA2002-03-073, 2003-Ohio-3695, ¶ 7. The State has not cited any authority to the contrary.

{¶ 30} *State v. Collins* was a decision of this court, but it was overruled in *State v. Tolliver*, 2d Dist. Montgomery No. 15184, 1996 WL 715438 *5 (Dec. 13, 1996).[2] In that case, at *4, we held that even when the plain error asserted is the failure to instruct the jury on an essential element of the offense, a manifest miscarriage of justice must be shown to secure reversal. In that case, the defendant was convicted of Kidnapping, and the jury was never instructed "that an essential element of the charged offense was that [the defendant's] purpose in removing [the victim] from the place where he was found or restraining him of his liberty was for the purpose of terrorizing him or inflicting serious physical harm upon him." *Id.*, at *2. We described the facts in that case as follows:

> The State presented evidence that [the defendant] conspired with seven teenagers to lure her boyfriend, Brian Denney, into her basement, where they would beat him, tie him up, and cut off his hair. When Denney arrived home from work, he went to the basement, as was his custom, to change clothes. He was struck in the head from behind with a board, and fell to the floor where he was beaten by several of the teenagers and [the defendant]. [The defendant] and one teenager then tied Denney

---

[2] The defendant in the case cited was Jackie Tolliver, not the same person as the defendant in the case before us.

to a chair, and [the defendant] and at least one of the teenagers beat Denney with pistols. [The defendant] then cut Denney's hair. While Denney was in the chair, one of the teenagers pointed a gun at Denney, and it discharged. Afterwards, [the defendant] ordered Denney to leave the house. Denney was treated at Good Samaritan Hospital for injuries inflicted during the incident. He lost a tooth and sustained a basilar skull fracture. When the police searched [the defendant's] home pursuant to a warrant, they found blood not only on the floor, but high up on the walls of the basement. They also found Denney's hair. *Id.*, at *1.

**{¶ 31}** In concluding that the failure to have instructed the jury on the element of having had the purpose of inflicting serious physical harm upon, or terrorizing, the victim was not a manifest injustice, we noted that the attention of the jury was focused on a different issue, exclusively:

> In the case before us, the real point of dispute between the parties was whether [the defendant] was a knowing participant in the brutal attack upon Denney. Although [the defendant] did not testify, her counsel argued in closing that she had no foreknowledge that the teenagers were going to tie Denney to a chair and beat him; the teenagers, on the other hand, testified that she had planned and instigated the assault. The question for the jury was whom to believe.

> Because the attention of the jury was never focused on whether [the defendant], assuming that she instigated and planned the assault, had the requisite purpose in doing so, it is unlikely that the jury's verdict turned upon the failure to have given the jury this instruction. We cannot, therefore, say that a manifest miscarriage of justice

occurred in this case. *Id.,* at *2-3.

{¶ 32} By contrast, in the case before us, Tolliver, who testified, did focus the attention of the jury on his purpose, and state of mind, generally, during his physical confrontation with Jordan, even going so far, at one point, as testifying that: "I didn't *recklessly* use force." (Emphasis added.) Unlike the defendant in *Tolliver, supra,* the defendant in the case before us did not claim that he was just a bystander to events involving others.

{¶ 33} We conclude that *State v. Tolliver*, *supra*, is distinguishable. While the jury in the case before us might well have found on the evidence in the record that Tolliver recklessly used force, or recklessly threatened the immediate use of force, against Jordan (or even that he had the intent to do so), that element was very much in dispute between the parties. The failure to submit that essential element to the jury worked a manifest injustice upon Tolliver, because it deprived him of his right to have a jury decide that issue beyond reasonable doubt.

{¶ 34} The trial court's failure to have submitted the issue of recklessness to the jury was plain error. Tolliver's sole assignment of error is sustained.


## V. Conclusion

{¶ 35} Tolliver's sole assignment of error having been sustained, the judgment of the trial court is Reversed; and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., dissenting:

{¶ 36} Because I believe the use-of-force element in a prosecution for robbery under R.C. 2911.02(A)(3) should not have recklessness added as a culpable mental state, I dissent.

{¶ 37} I start with the wording of the statute itself, which does not include recklessness as an element. The robbery statute in question already has two culpable mental states. Robbery, in violation of R.C. 2911.02(A)(3), involves the commission of a theft offense by force against a person. The theft statute, R.C. 2913.02, states: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either property or services * * *." Therefore, to commit a robbery, an offender must both purposely deprive the owner and knowingly obtain the property. Those are the only mental-state elements of the offense.

{¶ 38} A survey of case law interpreting the various forms of aggravated robbery and robbery reveals that recklessness is not added as an element of those offenses. Aggravated robbery in violation of R.C. 2911.01(A)(1) is the commission of a theft offense while having and displaying or using a deadly weapon. In *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, the Ohio Supreme Court held that recklessness should not be read into the statute and that the weapon-display-or-use portion of the offense involved strict liability. Likewise, for the R.C. 2911.01(A)(3) form of aggravated robbery, which involves the commission of a theft offense with infliction of serious physical harm, the Ohio Supreme Court has held that the infliction-of-serious-physical-harm element is strict liability. *State v. Horner*, 126 Ohio St.3d 466, 2010–Ohio–3830, 935 N.E.2d 26. That form of aggravated robbery does not require any further mens rea beyond what is encompassed in the

theft portion of the statute. *Id.* at ¶53. Similarly, robbery, in violation of R.C. 2911.02(A), requires the commission of a theft offense while the offender merely has a deadly weapon. (A lack of display or use of the weapon distinguishes this offense from aggravated robbery under R.C. 2911.01(A)(1)). In *State v. Wharf*, 86 Ohio St.3d 375, 715 N.E.2d 172 (1999), paragraph one of the syllabus, the Ohio Supreme Court held that "[t]he deadly weapon element of R.C. 2911.02(A)(1) * * * does not require the mens rea of recklessness."

{¶ 39} This brings us to the case that first added a reckless mens rea to a robbery statute, *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ("*Colon I*"). There the court determined that recklessness is an element of robbery in violation of R.C. 2911.02(A)(2), which involves the commission of a theft offense with infliction of physical harm. I would not rely on *Colon I* as precedent for this proposition for at least two reasons. First, as noted in *Lester,* "[i]n *Colon I*, there was 'no dispute' that the defendant's indictment for robbery in violation of R.C. 2911.02(A)(2) was defective for failure to allege a mens rea." *Lester* at ¶29, quoting *Colon I* at ¶10. "'[T]he state agree[d] that the omission in the indictment of one of the essential elements of the crime of robbery,' i.e., the mens rea, rendered the indictment defective." *Id.* Therefore, *Colon I* never really analyzed the recklessness issue because the State had conceded the point. Second, in *Horner,* at both ¶45 and ¶54, the Ohio Supreme Court overruled *Colon I*, although perhaps not precisely on the recklessness issue. Nevertheless, the clear implication of ¶54 of *Horner* is that *Colon I* was wrongly decided regarding the addition of a reckless mens rea requirement to robbery under R.C. 2911.02(A)(2).

{¶ 40} A review of other statutory wording, and its analysis or lack thereof, further convinces me that recklessness should not be added as a culpable mental state for the force element of robbery under R.C. 2911.02(A)(3). I note that the resisting-arrest statute, R.C. 2921.33, distinguishes between recklessness and force: "(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest * * *." Because recklessness is distinguished from force in that iteration, one could conclude the legislature viewed force and recklessness as separate concepts. In the same vein, when the legislature requires the use of force to be accompanied by a reckless mental state it does so explicitly, as in the assault statute, which provides: "No person shall recklessly cause serious physical harm * * *." R.C. 2903.13(B). The absence of a similar reckless modifier for the word "force" in the robbery statute should be viewed as an intention to exclude it. Moreover, force appears in numerous statutes, and I could find no case law for any of them appending an unmentioned culpable mental state of recklessness to the force element. For example, R.C. 2905.01, the kidnapping statute, provides: "(A) No person, by force, * * * shall remove another * * *." No case law supports the notion that this force element must be accomplished recklessly. The standard OJI instruction on the kidnapping offense does not suggest that recklessness should be included for the force element. OJI 505.01. Similarly, R.C. 2911.11(A)(1), the aggravated burglary statute, states: "No person, by force, * * * shall trespass * * *." No case law supports the notion that this force element must be accomplished recklessly. The standard instruction, OJI 511.11, does not suggest inclusion of a reckless instruction with regard to the force element. I see no reason why the word "force" in the robbery statute, R.C. 2911.02(A)(3), should be interpreted any differently than it is in these other statutes.

{¶ 41} I recognize some courts of appeals have held that recklessness is a necessary

part of the force component of robbery under R.C. 2911.02(A)(3). *See*, *e.g.*, *State v.Ripperger*,12th Dist. Butler No. CA2007-11-304, 2009-Ohio-925, ¶14; *State v. Adams*, 12th Dist. Fayette No. CA2009–09–018, 2010–Ohio–1942, ¶13; *State v. Robertson*, 180 Ohio App.3d 365, 2008-Ohio-6909, 905 N.E.2d 678, ¶ 23 (10th Dist.2008). But each of these cases pre-dates *Horner* and the overruling of *Colon I*. There is also a reference in *State v. Tyson*, 10th Dist. Franklin No. 10AP–830, 2011–Ohio–4981, ¶ 33, that an R.C. 2911.02(A)(3) robbery requires the reckless use of force. However, that statement is made without citation, or analysis, and without recognition of the *Horner* result.

{¶ 42}  My conclusion is that robbery by force, prohibited by R.C. 2911.02(A)(3), does not include a reckless mens rea for the force element. Thus, the trial court could not have been at fault for not instructing the jury about recklessness. Accordingly, I would affirm the judgment of the trial court.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Andrew T. French
Charles M. Blue
Hon. Frances E. McGee