[Cite as *State v. Elsberry*, 2013-Ohio-1378.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                         |   |                         |
|-------------------------|---|-------------------------|
| STATE OF OHIO,          | : |                         |
| Plaintiff-Appellee,     | : | CASE NO.  CA2011-12-221 |
|                         | : | O P I N I O N           |
| - vs -                  |   | 4/8/2013                |
|                         | : |                         |
| DWAYNE ELSBERRY,        | : |                         |
| Defendant-Appellant.    | : |                         |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-09-1453

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Dwayne Elsberry, appeals his conviction in the Butler County Common Pleas Court for physical-harm robbery in violation of R.C. 2911.01(A)(2), a second-degree felony. Elsberry argues the trial court erred by, among other things, refusing to instruct the jury on the lesser included offense of robbery by force in violation of R.C. 2911.01(A)(3), a third-degree felony. For the reasons that follow, we affirm Elsberry's conviction for physical-harm robbery.

{¶ 2} In the early morning hours of August 23, 2011, Elsberry went into a Walgreens drug store in Middletown, Ohio, picked up two candles from the store's shelf, and walked up to the checkout counter, ostensibly, to purchase them. When Walgreens employee, Kelli Myers, went to the store's cash register to ring up Elsberry's purchase, he put what appeared to be the barrel of a gun on the counter and demanded money from her. As Myers began retrieving money from the register, Elsberry tapped the gun on the counter and told her several times to "hurry up." Myers gave him close to $200, and Elsberry fled.

{¶ 3} The police were called to the scene. Upon reviewing the video from the store's security camera, Middletown Police Detective Steve Winters immediately recognized the perpetrator as Elsberry. Detective Winters and his fellow officers obtained and then executed a search warrant for Elsberry's residence. The officer found Elsberry mowing the grass in his back yard. Elsberry admitted to the officers that he was the one who had robbed the Walgreens. However, he insisted he had not used an actual gun, but instead, had merely used his finger tucked underneath his shirt to make the store clerk believe he had a gun.

{¶ 4} Elsberry was indicted for aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, accompanied by a firearm specification. At trial, Myers identified Elsberry as the perpetrator, and said she gave him the money because she felt there would be "consequences" if she did not. She testified that the gun Elsberry used was "black" and "dull" and "sounded heavy" when he laid it on the counter because it "sounded like metal." She also testified that the gun had a barrel that was probably about five or six inches long and that she had "no doubt" she was "looking at the barrel of a gun" during the robbery. The state also presented, as State's Exhibit B, a still photograph taken from the video of the robbery recorded by the store's security camera. The photograph shows Elsberry sticking what appears to be the barrel of a gun at Myers.

{¶ 5} Elsberry testified on his own behalf, and admitted he had robbed the Walgreens

on the night in question to obtain money because he was addicted to crack cocaine. He acknowledged he had lied to police when he told them he had used his finger underneath his shirt, and did so because he believed that if he had told them he used a BB gun during the incident, he would have gotten into the same trouble in which he would have been had he used an actual firearm. He also acknowledged his attorney had explained to him that if he used a BB gun rather than an actual firearm, his penalty would be less severe. Elsberry also admitted that if the state had not produced the photograph showing the barrel of a gun being pointed at Myers, he would have continued to insist he had merely used his finger under his shirt.

{¶ 6} At the close of evidence and outside the jury's presence, Elsberry's defense counsel requested that the jury be instructed on the lesser included offense of theft. The state responded that if any lesser included instruction was to be provided to the jury, it should be for the lesser included offense of physical-harm robbery in violation of R.C. 2911.02(A)(2), a second-degree felony.

{¶ 7} The trial court initially expressed its belief that the appropriate lesser included offense instruction to give to the jury was for robbery by force in violation of R.C. 2911.02(A)(3), a third-degree felony. The trial court later suggested that the jury be given an instruction containing the elements of both physical-harm robbery and robbery by force, and still later, suggested that the jury be given separate instructions on *both* physical-harm robbery and robbery by force. However, the trial court eventually chose to instruct the jury on the lesser included offense of physical-harm robbery but not robbery by force.

{¶ 8} The jury returned a verdict finding Elsberry guilty of physical-harm robbery in violation of R.C. 2911.02(A)(2), and the trial court sentenced him to serve eight years in prison.

{¶ 9} Elsberry now appeals, assigning the following as error:

- 3 -

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION IN DECLINING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF ROBBERY, IN VIOLATION OF R.C. 2911.02(A)(3).

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PROVIDED JURY INSTRUCTIONS AT TRIAL THAT INCLUDED INCORRECT STATEMENTS OF LAW.

{¶ 14} Assignment of Error No. 3:

{¶ 15} APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, WHICH DENIAL RESULTED IN PREJUDICE.

{¶ 16} Assignment of Error No. 4:

{¶ 17} THE TRIAL COURT COMMITTED PLAIN ERROR IN THE LESSER INCLUDED OFFENSE INSTRUCTION WHERE IT OMITTED AN INSTRUCTION ON THE MENS REA ELEMENT OF RECKLESSNESS.

{¶ 18} We shall discuss Elsberry's assignments of error in a slightly different order from the one in which he has presented them, in order to facilitate our analysis of the issues raised therein.

{¶ 19} In his first assignment of error, Elsberry argues the trial court "erred" and "abused [its] discretion" in declining to instruct the jury on robbery by force in violation of R.C. 2911.02(A)(3), a third-degree felony. We disagree.

{¶ 20} R.C. 2911.02, which defines the offense of robbery, provides:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

- 4 -

(1)  Have a deadly weapon on or about the offender's person or under the offender's control;

(2)  Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3)  Use or threaten the immediate use of force against another.

(B)  Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

(C)  As used in this section:

(1)  "Deadly weapon" has the same meaning as in section 2923.11 of the Revised Code.

(2)  "Theft offense" has the same meaning as in section 2913.01 of the Revised Code.

{¶ 21} "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3) "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901(A)(1). A charge of robbery in violation of R.C. 2901.02(A)(2), a second-degree felony, is commonly referred to as "physical-harm" robbery, while a charge of robbery in violation of R.C. 2901.02(A)(3) is commonly referred to as a "force" robbery or a robbery "by force."

{¶ 22} In determining whether one offense is a lesser included offense of another, a court must "consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 26 ("clarifying" *State v. Deem*, 40 Ohio St.3d 205 [1988]). However, simply because an offense is a lesser included offense of the crime with which a

defendant has been charged does not mean that the trial court is automatically required to provide the jury with an instruction on the lesser included offense. *State v. Rice*, 4th Dist. No. 03CA2717, 2003-Ohio-6515, ¶ 13, citing *State v. Thomas*, 40 Ohio St.3d 213, 216 (1998).

{¶ 23} A jury instruction on a lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Shane*, 63 Ohio St.3d 630, 632 (1992); and *State v. Brown*, 8th Dist. No. 93007, 2010-Ohio-2460, ¶ 54, quoting *State v. Harris*, 129 Ohio App.3d 527, 535 (10th Dist.1998).

{¶ 24} Elsberry argues the trial court erred and abused its discretion in refusing to provide the jury with an instruction on the lesser included offense of robbery by force in violation of R.C. 2911.02(A)(3). While we agree that robbery by force is a lesser included offense of the crime originally charged in this case, i.e., aggravated robbery in violation of R.C. 2911.01(A)(1), we conclude that the evidence did not reasonably warrant giving the jury a lesser included instruction on robbery by force.

{¶ 25} Defense counsel questioned Elsberry on direct examination about the video of the robbery which the state had played for the jury. Elsberry testified that the object he is seen holding in the video was "a fake BB gun." Elsberry acknowledged that the video of the robbery shows that he attempted to hide the BB gun, and stated that he did so because he did not want the store's clerk to know the gun was a fake. Elsberry also testified that the BB gun was approximately "five, ten pounds." When Elsberry was asked by his defense counsel "what is a grown man doing with a BB gun in the first place," Elsberry answered that he had taken it from his son. Elsberry also testified that the BB gun was not "capable of killing anyone[.]" Defense counsel then questioned Elsberry as follows:

Q. Were [you] using [the BB gun] as a weapon?

A. No, I wasn't.

Q. W[ere you] posing it or carrying it as a weapon?

A. No.

Q. Were you trying to make others think that it was a weapon?

A. No.

Q. Were you trying to make the Walgreens employee think you had a weapon?

A. Yes, yes.

{¶ 26} Elsberry also testified that after he left Walgreens following the robbery, he threw the BB gun in a storm drain next to his residence. Elsberry testified that he had asked an investigator for the public defender's office to look for the BB gun about two weeks before trial, but the investigator was not able to find it. When defense counsel asked Elsberry, "[w]hy wouldn't [the investigator] have found [the BB gun]," Elsberry answered, "[d]ue to heavy, precipitation, washed the gun away most likely."

{¶ 27} The prosecutor cross-examined Elsberry as follows:

Q. [Defense counsel] asked you a series of very specific questions, okay. And asked you, Did you carry that BB gun as if it was a weapon? And you said, no?

A. Correct.

Q. Right. Did you display it or brandish it like it was a weapon? And you said, no. Right?

A. Correct.

Q. What were you doing with it then?

A. What was I doing with it?

Q. Yeah. What was your purpose in having it there?

A. Making the cashier seem though it was a weapon. [Sic.]

Q. You heard Ms. Myers' testimony, right?

A. Yes.

Q. And you come in and she sees a gun and figures, I better give him the money or I'm going to face some consequences, right?

A. Yes.

Q. That's what you wanted her to think, right?

A. Yes.

Q. That's the whole point of pointing it at her?

A. Well, I wouldn't say I was pointing it at her. It come up under my shirt at that time.

Q. Look at that picture [referring to State's Exhibit 2, the still photograph showing Elsberry pointing what appears to be the barrel of a gun at Myers].

A. Yeah, I see it.

Q. It's pointed right at her, isn't it?

A. Yeah, but it come from up under my shirt because I meant to conceal it, because I didn't want her to see it. Because as she stated, she didn't know if it was a real gun in the beginning, she stated. But I didn't want to reveal it so she could see it – actually see the gun and actually see that it was a fake gun. It was a BB gun.

Q. Isn't it true, that as you saw in the video, you're trying to cover it up with your shirt?

A. Correct.

Q. Isn't it true, the reason you're trying to cover that up, is so that the gun itself won't show up on the video so that in the future, if you got caught, you could sit in front of 12 people and say, Folks, I didn't have a gun at all. That was just my finger under my shirt? Isn't that the reason why you had it under your shirt?

A. No, that wasn't the reason I had it under my shirt.

{¶ 28} What the foregoing portions of Elsberry's testimony on direct and cross-

examination shows is that (1) Elsberry denied that the gun he was carrying was an actual firearm, and insisted, instead, it was a "fake BB gun," (2) Elsberry denied that he intentionally pointed the BB gun at Myers, but acknowledged that he had inadvertently done so, (3) Elsberry admitted that he wanted to make Myers believe he had an actual weapon, but did not want her to see the weapon because she might then see it was a fake gun, and (4) Elsberry wanted Myers to believe that she had to give him the money, and that she would face consequences if she did not.

{¶ 29} The admissions Elsberry made during his testimony proves that he committed physical-harm robbery and not simply robbery by force because his admissions show that he "threatened to inflict physical harm on another" in committing a theft offense. Given Elsberry's admissions, the jury could not have reasonably found that he merely intended to use force on Myers. Therefore, the jury could not have reasonably acquitted Elsberry of physical-harm robbery and convicted him, instead, of robbery by force.

{¶ 30} We also reject Elsberry's assertion that since "no express threat was uttered by [him]" to Myers, "a legitimate question exist[s]" as to whether he committed a robbery by force, since it is well settled that a threat does not have to be express, but instead, may be implied. *See e.g., State v. Ellis*, 10th Dist. No. 05AP-800, 2006-Ohio-421, ¶ 7 (appellant made implied threat of physical harm to victim when he told her he had a gun, was on drugs and needed the money which permits a reasonable inference of a threat of physical harm sufficient for R.C. 2911.02[A][2]). We also note, once again, that Elsberry essentially admitted at trial that he threatened Myers with physical harm, in order to get her to give him the money, and therefore the jury could not have reasonably found that Elsberry merely had used force against Myers to rob her.

{¶ 31} Consequently, the trial court did not err in refusing to instruct the jury on robbery by force.

{¶ 32} In light of the foregoing, Elsberry's first assignment of error is overruled.

{¶ 33} In his second and fourth assignments of error, Elsberry challenges the jury instructions the trial court gave as to the lesser included offense of physical-harm robbery in violation of R.C. 2911.02(A)(2). As to this offense, the trial court provided the following instructions:

> Before you can find the defendant guilty of Robbery you must find beyond a reasonable doubt that on or about the [sic] August 23, 2011, in Butler County, Ohio, the defendant in committing, attempting to commit or fleeing after committing or attempting to commit a theft offense, used or threatened physical harm against Kelli Myers.
>
> * * *
>
> "Physical harm" to persons means any injury, illness, or other physiological impairment, regardless of its gravity or duration.
>
> While the State is not required to present proof of fear or apprehension on the part of the victim, evidence has been admitted to prove that Kelli Myers was put in fear. This evidence was offered by the State to prove that the defendant used or threatened physical harm. If you find that Kelli Myers was placed in fear and that her fear was reasonable under the circumstances and that it would cause a reasonable person to give up his or her property against his or her will, then you may find that the State has proved the element of threat of physical harm.
>
> The threat of violence, compulsion or constraint need not be explicit; rather, it can be implied from the perpetrator's demeanor and tone of voice.

{¶ 34} In his fourth assignment of error, Elsberry argues the trial court committed plain error by failing to instruct the jury on the proper mens rea for the physical-harm element of robbery in violation of R.C. 2911.02(A)(2), which he asserts is "recklessness" by operation of R.C. 2901.21(B). Elsberry, relying on *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624 (*Colon I*), reconsidered and limited in *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749 (*Colon II*) and *State v. Ripperger*, 12th Dist. No. CA2007-11-304, 2009-Ohio-925, contends that he was prejudiced by the omission of a recklessness instruction because without it, the

jury may have improperly treated the charge of physical-harm robbery as a strict liability offense.[1] We find Elsberry's argument unpersuasive.

{¶ 35} Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element is error." *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). However, where a defendant fails to object to an allegedly improper jury instruction, the defendant waives all but plain error with respect to the issuance of said instruction. *Adams*, 62 Ohio St.2d at 153. "An alleged error is plain error only if the error is 'obvious,' and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 36} In the present case, Elsberry did not object to the court's failure to include an instruction on the appropriate mens rea as to the element of physical harm.[2] Accordingly, we review the issuance of this instruction for plain error. After a review of the record, we conclude that even if the trial court was required to instruct the jury on the mens rea of recklessness with respect to the physical harm element of robbery in violation of R.C. 2911.02(A)(2) and erred by not doing so, as Elsberry contends, the alleged error would not

---

1. We note that although Elsberry relies upon *Colon* and its progeny, he is not challenging the sufficiency of his indictment. Rather, his challenge relates to the jury instructions as to the physical-harm robbery offense. The failure to object to the jury instructions given by the trial court is reviewed for plain error. *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). Moreover, the decision in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, made it clear that structural-error analysis no longer applies where a defendant fails to object to a defective indictment because "by failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal." *Id.* at ¶ 55. Accordingly, a plain error analysis is appropriate for this case.

2. Elsberry objected to including an instruction on R.C. 2911.02(A)(2) as a whole because he did not believe it met the test in *State v. Deem*, 40 Ohio St.3d 205 (1988), for a lesser included offense. However, he did not thereafter make any of the objections to the instruction that he now relies upon on appeal.

have amounted to plain error. Elsberry admitted at trial that he wanted Myers to believe that he had an actual firearm so that she would give him the money and that there would be consequences if she did not, and thus essentially admitted his guilt on that offense.

{¶ 37} Given the foregoing, Elsberry's fourth assignment of error is overruled.

{¶ 38} In his second assignment of error, Elsberry also argues the trial court committed plain error when providing these instructions as to a physical-harm robbery. He contends that the instructions given improperly used the language and elements of robbery by force in violation of R.C. 2911.02(A)(3), except that it substituted the term "physical harm" for the term "force." As a result, Elsberry asserts that the trial court failed to properly define an offense under R.C. 2911.02(A)(2) because its instruction on that offense failed to provide all elements of physical-harm robbery and "add[ed] a broadly-worded element" not present in that section, namely, "use of physical harm." He argues this "confusion of the elements" of R.C. 2911.02(A)(2) and 2911.02(A)(3) created a possibility that he was convicted of physical-harm robbery even though the jury did not find that the state had proven all of the elements of that offense. Finally, he contends that the trial court erred by including a "fear and apprehension" instruction in its physical-harm robbery instruction. We find these arguments unpersuasive.

{¶ 39} Elsberry has failed to convince us that any mistake the trial court made in instructing the jury on the lesser included offense of physical-harm robbery clearly changed the outcome of his trial. *Id.* The trial court's instruction on physical-harm robbery did not, as Elsberry asserts, add "a broadly-worded element" not present in that subsection. The trial court did not instruct the jury that "use of physical harm" was an element of the offense of physical harm, but rather, that before they could find Elsberry guilty of physical-harm robbery, they had to find that he "used or threatened physical harm" against Myers. This instruction substantially follows the language of R.C. 2911.02(A)(2).

{¶ 40} As to Elsberry's claim that the trial court committed plain error by including a "fear and apprehension" instruction in its instructions to the jury, we note that while such an instruction is a standard jury instruction with regard to a charge of force robbery in violation of R.C. 2911.03(A)(3), it is not a standard instruction to a charge of physical-harm robbery in violation of R.C. 2911.02(A)(2). However, the instruction given to the jury was relevant to the fear Myers experienced during the robbery and why she believed that there would be consequences if she did not comply with Elsberry's demand for money. It was also relevant to the "theft" element of the charge of physical-harm robbery since the state was required to establish that Myers gave Elsberry the money against her will. Additionally, even though part of the jury instruction was taken from the definition of "force," the word "force" itself was not included in the final instructions given to the jury and the instruction was relevant to the facts of this case. In light of all the foregoing, Elsberry has failed to convince us that the aforementioned portions of the trial court's jury instructions amounted to plain error.

{¶ 41} As a result, Elsberry's second assignment of error is also overruled.

{¶ 42} In his third assignment of error, Elsberry argues he was denied the effective assistance of counsel because his trial counsel failed to object to the improper jury instructions, as set forth in his second and fourth assignments of error. This argument lacks merit. To establish a claim of ineffective assistance of counsel, a criminal defendant must show that his defense counsel's performance fell below an objective standard of reasonableness *and* that there is a reasonable probability that the outcome of his trial would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984). A "reasonable probability" exists when counsel's errors are sufficient to undermine an appellate court's confidence in the verdict reached. *Id.* at 694. Here, Elsberry cannot meet the prejudice prong of the *Strickland* standard, because he admitted at trial that he intended to make Myers believe he had an actual firearm in his

possession at the time he robbed her and that he did so in order to get her to give him the money, and therefore essentially admitted his guilt to the offense of physical-harm robbery in violation of R.C. 2911.02(A)(2).

{¶ 43} Accordingly, Elsberry's third assignment of error is overruled.

{¶ 44} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.